**James Harmon JAUBERT,
Jr., Appellant,**

v.

**The STATE of Texas.**

**Nos. 0260–01 to 0264–01.**

Court of Criminal Appeals of Texas.

April 10, 2002.

Louis E. Sturns, Arlington, for Appellant.

C. James Gibson, Asst. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for State.

### *OPINION*

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY and COCHRAN, JJ., joined.

We granted review to consider, among other issues, the question of whether Article 37.07 § 3(g)[1] applies to evidence other than that used during the State's case-in-

---

**1.** All future references to Articles refer to the    Code of Criminal Procedure.

chief.[2] We will reverse the decision of the Court of Appeals.

## A. Background

Appellant was involved in three drive-by shootings in Fort Worth. He plead guilty to five separate indictments charging murder and attempted murder, and he elected to have a jury assess punishment. During its case-in-chief, the State introduced evidence of each of the charged offenses. No evidence of extraneous offenses or bad acts was presented by the State at that time.

In the defense case-in-chief, appellant introduced evidence that, since the crimes, he had rediscovered religion and was wholly reformed. The defense also called witnesses to testify that he was a good child and a well-mannered youth. The State cross-examined these witnesses testified about various extraneous offenses and bad acts appellant had committed, including raping a fellow inmate. The State also produced rebuttal witnesses to testify about the offenses.

The jury assessed one sixty year sentence, one twenty year sentence, and three ten year sentences. On appeal the case was transferred to the Tenth Court of Appeals (the Waco Court). Appellant claimed that his trial counsel was ineffective for failing to request, pursuant to Article 37.07 § 3(g), that the State give notice of its intent to offer evidence of extraneous offenses or bad acts. The Waco Court, with one justice dissenting, agreed and reversed the judgment of the trial court, remanding the case for a new punishment hearing in accordance with article 44.29(b) of the Texas Code of Criminal Procedure.[3]

## B. Analysis

■ To succeed on an ineffective assistance claim, appellant must show that his attorney's performance was deficient and that the deficient performance prejudiced him.[4] In this case, appellant alleges that trial counsel's conduct was deficient because he failed to request notice of the State's intent to use extraneous bad acts. As a part of establishing this claim, appellant must show that he was entitled to notice of the extraneous offenses introduced at trial.

■ The present issue is governed by statute, so we resort to the usual rules of statutory construction. We look solely to the plain language of the statute for its meaning unless the text is ambiguous or application of the statute's plain language would lead to an absurd result that the Legislature could not possibly have intended.[5] Article 37.07 § 3(g) provides, in relevant part:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence.

Under its plain language, then, Article 37.07 § 3(g) incorporates by reference Rule 404(b)'s manner of giving notice. Rule 404(b) states that certain evidence is admissible under the rule, provided that, "upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's *case-in-chief* such evi-

---

**2.** Due to our disposition of this question, the State's other grounds for review are dismissed.

**3.** *Jaubert v. State*, 65 S.W.3d 73 (Tex.App.-Waco 2000).

**4.** *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

**5.** *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

dence...."[6] Because Rule 404(b)'s notice encompasses only case-in-chief evidence, Article 37.07 § 3(g)'s notice requirement appears on its face to encompass only case-in-chief evidence.

■ Even if the statutory language is ambiguous, however, extratextual factors support limiting Article 37.07's notice requirement to case-in-chief evidence. In conducting an extratextual inquiry, we may consider, among other matters: (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction; (6) administrative construction of the statute; and (7) the title (caption), preamble, and emergency provision.[7]

The legislative history of Article 37.07 § 3(g) is detailed in the Fort Worth Court of Appeals' opinion in *Washington v. State*,[8] which addressed the same issue we consider today. That history indicates that the primary purpose of the statutory amendment was to clarify, after this Court's decision to the contrary in *Grunsfeld*,[9] that evidence of unadjudicated extraneous offenses and prior bad acts is admissible at punishment. The notice provision was designed to reinforce existing law regarding notice of extraneous offenses, not to create a new and different requirement:

> REPRESENTATIVE PLACE: What this is going to do is to clarify the admission of extraneous offenses in a criminal case, and if its going to be done—ah—there will be some notice provision to the defendant and his lawyer that it's going to be done, which I think *is just simply a cleanup* in that this is *strengthening* the law because the law we have now on the books is not being used. Or, at least if it is being used, it's being used with some skepticism or reluctance on the part of the State.

> REPRESENTATIVE SMITH: So you're not prohibiting it, you're just requiring that the notice be given ten days prior to trial?

> REPRESENTATIVE PLACE: No, and I think it's cleaning up the fact that it is our intention that as a legislative body that if there is an extraneous offense—ah—and it can be properly proven, this bill says that it's going to be admitted.

> REPRESENTATIVE SMITH: And you're not requiring them to state exactly what that evidence might be, but simply that they would be introducing extraneous evidence?

> REPRESENTATIVE PLACE: *I'm not changing any of the laws of discovery. I'm simply giving that there be notice—a provision that that's going to be used. Whatever the discovery is now, that's what it will continue to be.*[10]

At the time the statute was amended, Rule 404(b) described the existing law regarding notice of extraneous offenses.

Moreover, common law has favored limiting such a notice requirement to evidence introduced in the State's case-in-chief.[11]

---

6. Tex.R. Evid. 404(b)(emphasis added).

7. Tex. Gov't.Code, § 311.023; *Brown v. State*, 943 S.W.2d 35, 38 (Tex.Crim.App.1997).

8. *Washington v. State*, 943 S.W.2d 501 (Tex. App.-Fort Worth 1997, pet. ref'd).

9. *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim.App.1992).

10. *Id.* at 507 (quoting from debate on Tex. C.S.S.B. 1067, House Floor, 73rd Leg., R.S., May 6, 1993).

11. *Gipson v. State*, 619 S.W.2d 169, 170 (Tex. Crim.App.1981).

We have held that, when the State presents extraneous offense evidence in rebuttal to mitigation evidence offered by the defendant, advance notice of intent to offer the extraneous offense evidence is not possible: "In such a situation, the defendant, rather than the State, determines whether a contested issue will be raised, and his determination will not be made known until he presents his case. It would be practically impossible for the State to give notice until that time." [12]

The extraneous offense evidence in this case was introduced during cross-examination and rebuttal testimony, not in the State's case-in-chief. Therefore, appellant was not entitled to notice of the extraneous offenses.[13] The judgment of the Court of Appeals is reversed, and the trial court's judgment is affirmed.[14]

COCHRAN, J., filed a concurring opinion.

MEYERS, J., filed a dissenting opinion in which PRICE, and HOLCOMB, JJ., joined.

COCHRAN, J., filed a concurring opinion.

I join the majority opinion. I add this concurrence simply as a reminder that the letter of the law is not always a perfect reflection of the spirit of the law. The spirit of Rule 404(b),[1] article 37.07, § 3(g),[2] and article 38.37[3] is to ensure that Texas criminal proceedings are not a

---

**12.** *Id.* at 170–171.

**13.** The dissenting opinion would have us duck the underlying issue in this case by addressing only the ineffective assistance claim. We could have chosen that roundabout path. We could also have resolved this case on the interesting issue of which jurisdiction's law applies to transferred cases. But the lower court's opinion is published, and it is incorrect on the underlying issue. Addressing the underlying issue is the most straightforward manner of resolving the case and, of course, far more helpful to bench and bar than the dissenting opinion's suggested route.

**14.** There are no remaining points of error to be resolved by the Court of Appeals.

**1.** TEX.R. EVID. 404(b) reads:

(b) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence

other than that arising in the same transaction.

**2.** TEX.CODE CRIM. PROC. Art. 37.07, § 3(g) reads:

On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

**3.** TEX.CODE CRIM. PROC. art. 38.37, § 3, provides:

On timely request by the defendant, the state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 2 in the same manner as the state is required to give notice under Rule 404(b), Texas Rules of Criminal Evidence.

contest of clever gamesmanship or trial by ambush.[4] There is very little formal pre-trial discovery mandated in Texas criminal proceedings, but our Rules of Evidence are drafted to ensure that Texas criminal practitioners remain gentlemen and gentlewomen who do not spring evidentiary surprises on their adversaries.

A number of our Rules of Evidence require advance notice when practicable and reasonable.[5] Rule 404(b) is one of those rules. It requires that the prosecution give the defense reasonable notice of its intent to offer extraneous offense evidence in the State's case-in-chief. Article 37.07, § 3(g) is built upon that same foundation. This requirement of advance notice, upon timely request, applies only to the State's case-in-chief because prosecutors are no more clairvoyant than the rest of the world. They cannot, and thus should not be required to, predict precisely what evidence the defense will introduce or what rebuttal evidence might be relevant as a result of a particular defense. Our law has long recognized this fact.[6]

---

4. "It shall be the primary duty of all prosecutors ... not to convict, but to see that justice is done." Tex.Code Crim. Proc. art. 2.01. This duty falls upon the prosecutor in his capacity as the State's representative in criminal matters. As a trustee of the citizens' interest in providing fair trials, the prosecutor is obliged to always be forthcoming as well as honest, to ensure that the truth will always prevail and the judge and jury may properly render justice. Thus the prosecutor is more than a mere advocate, but a fiduciary to fundamental principles of fairness. *See Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), in which the Supreme Court eloquently set out this duty:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Our Texas criminal justice system works well only because prosecutors do take this obligation seriously.

5. For example, Rule 201(c) entitles either party to be heard as to the propriety of taking judicial notice. So does Rule 202, as do Rules 203 and 204. Under Rule 412, the defense must give advance notice of its intent to offer evidence of a victim's previous sexual conduct and make a proffer of that evidence *in camera*. Rule 609(f) requires both the prosecution and defense to give advance notice of their intent to use prior convictions to impeach a witness. Rule 705(b) entitles either the prosecution or the defense to voir dire a proposed expert concerning the underlying facts and data he relied upon in forming his opinion before the witness testifies before the jury.

6. *See, e.g., Elkins v. State*, 543 S.W.2d 648, 649 (Tex.Crim.App.1976) (State is not required to disclose the identity of rebuttal witnesses); *Hoagland v. State*, 494 S.W.2d 186, 189 (Tex.Crim.App.1973) (noting that the State cannot intend to introduce true rebuttal evidence before trial because the State does not know what theories the defendant will advance); *Washington v. State*, 943 S.W.2d 501, 506 (Tex.App.-Fort Worth 1997, pet. ref'd) (to hold that State is required to give advance notice of rebuttal extraneous offenses under art. 37.07 "would require the State to predict all possible arguments that a defendant might raise and then notify the defendant of the evidence that would rebut those possible arguments"); *Doyle v. State*, 875 S.W.2d 21, 22 (Tex.App.-Tyler 1994, no pet.) (concluding that it is not reasonable for the State to anticipate needing undisclosed witness to rebut defense testimony that it could not foresee); *Stringer v. State*, 845 S.W.2d 400, 403 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (Rule 404(b) notice requirement not applicable to rebuttal evidence); *Yohey v.*

On the other hand, it is possible for prosecutors to manipulate the notice rule's purpose and applicability simply by reserving all extraneous offense evidence until its rebuttal case, when notice is not required. Although this strategy conforms to the letter of the law, it clearly violates the spirit.

I do not suggest that any such manipulative strategy occurred in this particular case. Quite the contrary. This record supports the conclusion that both the defense and prosecution conducted themselves effectively, fairly, and in accord with the spirit, as well as the letter, of the law.

Here, appellant, James Harmon Jaubert, Jr., also known as "Big Jube" or "J.J.," pled guilty to a jury of one count of murder and four counts of attempted murder resulting from three separate "driveby" gang shootings in Fort Worth. During the punishment trial, the State presented evidence regarding all three events in its case-in-chief. The first "drive-by" shooting resulted in one victim being shot twice. The second "drive-by" shooting resulted in one victim being shot in the rear, and the bullet lodged so close to his spine that it could not be removed. In the third "drive-by" attack, which occurred only a few minutes after the second, two people were shot and a third was killed. Although the State presented many witnesses, the evidence was limited solely to the specific offenses charged in the indictment. No mention was made of any extraneous offense.

During its punishment case-in-chief, the defense offered numerous witnesses to testify that the defendant had found religion, changed his ways, and was, by the time of trial, a wholly repentent and reformed young man. The defense called appellant's retired pastor, a high school assis-

tant principal, a second cousin who knew appellant through church, and a civil rights investigator who had worked with appellant's mother. These witnesses had known appellant before he became involved in gangs and testified to his prior law-abiding and peaceful nature. The State did not cross-examine any of them concerning extraneous offenses.

Then the defense called witnesses who testified to appellant's changed nature after he had been arrested, charged with these offenses, and placed in jail. These witnesses included another cousin, who had received a call from appellant in jail. She testified that appellant lead her in prayer. Another was a lawyer whose son was also in the Tarrant County Jail and who had met appellant's parents during jail visitation. Another was appellant's uncle, who was a minister. Appellant's parents both testified and told of appellant's recent repentance and changed nature. Finally, appellant testified to his jailhouse transformation.

The State first referred to an extraneous offense during its cross-examination of appellant's minister-uncle. On direct, this witness concluded his testimony by stating that appellant's father had told him that appellant had turned his life around while in jail and had "become closer to the Lord." On cross-examination, the State established that appellant's uncle knew very little about either the offenses appellant had committed or his conduct while in jail. The State asked one question about the witness' knowledge of appellant's role in a jailhouse rape. The witness knew nothing of it.

During the direct examination of appellant's father, defense counsel himself brought up the subject of the jailhouse

---

*State,* 801 S.W.2d 232, 235 (Tex.App.-San Antonio, 1990, pet. ref'd) ("[b]y its very terms the notice requirements [of Rule 404(b)] are not applicable to rebuttal evidence").

rape and appellant's father testified that appellant was not involved in that event. On cross-examination, the State tested appellant's father's knowledge of his son's involvement in the rape. This was proper impeachment.

Appellant's testimony on direct was to the effect that he was "coming clean" with the jury about his past misdeeds, which were all the result of gang involvement. He voluntarily confessed to an uncharged drive-by shooting. He testified to two "conflicts" he had been involved in while in jail, one a fight with other inmates, and the other, a confrontation with a guard. He denied any involvement in the jailhouse rape incident, testifying that he had slept through it and had only heard about it from another prisoner. On cross-examination he continued to deny any personal knowledge or involvement in the rape.

Then came the State's rebuttal. Seven witnesses testified that appellant had not changed at all and that he was not a good candidate for community supervision. One of those witnesses was a lieutenant from the Tarrant County jail who testified generally about the jail rape, but who was not permitted to testify to what the rape victim had told him about appellant's role in that event because that was hearsay.

After the State's rebuttal case, appellant once more took the stand to rebut the impeachment evidence and reassert his innocence of the jail rape. He testified on direct examination that, in fact, there had been multiple jailhouse rapes, but that he was not involved in any of them. On cross-examination, his testimony changed more: his position was no longer that he slept through the rapes, and he also stated

that at least one of them occurred in an open cell close by while he was in the day room able to observe the event.

The jury, apparently rejecting appellant's theory that he had changed his ways and found religion, sentenced him to sixty years for the murder, twenty years for one of the attempted murder charges, and three ten-year sentences for the others.

Several facts are apparent from this brief recitation of the evidence: 1) the State did not offer any evidence of any conduct other than that concerning the charged offenses during its punishment case-in-chief; 2) appellant's defense was "I've found religion in jail and changed my ways"; 3) appellant's witnesses validated that defense and testified to appellant's good character before he joined a gang and to his reformation in jail; 4) these witnesses did not know about appellant's purported involvement in a jailhouse rape; 5) the State was entitled to test their knowledge of appellant's conduct while in jail and specifically concerning the jailhouse rape;[7] 6) appellant testified that he was very much aware of this incident but had no involvement because he was asleep; 7) the State was entitled to call rebuttal witnesses to directly contradict appellant's testimony concerning a fact independently relevant to punishment;[8] 8) appellant was entitled to, and did, testify in sur-rebuttal to deny or explain the testimony of the State's rebuttal witnesses.

The State did not start this character ball rolling. Nor did it hide the ball, simply saving up evidence of extraneous offenses to spring on rebuttal. Appellant opened the door to evidence of the jail-

---

7. *See* Tex.R. Evid. 405(a) ("[i]n all cases where [character] testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct").

8. *See generally* Goode, Wellborn & Sharlot, Texas Rules of Evidence: Civil and Criminal § 607.3 ("Impeachment by Contradiction") (2d ed.1993).

house rape by his defense strategy based upon a religious reformation while in jail, and thus the State was entitled to walk through that open door. The State violated neither the spirit nor the letter of the notice requirement in article 37.07, § 3(g), nor was the defense surprised. It had a ready answer to the jailhouse rape evidence. Thus, appellant's counsel could not be deemed ineffective for not requesting written notice of extraneous offenses because: 1) the law does not require notice of true rebuttal evidence; and 2) the evidence indicates that both appellant and his trial counsel were well aware of the rape allegation and had a response formulated.

Many cases, however, are not so clear cut. Thus, it may behoove a prosecutor to voluntarily deliver to the defense a written list of all known incidents which are not explicitly set out in the indictment, but of which the prosecutor is aware and which might become admissible for any reason at any time. This self-imposed duty has several beneficial aspects: 1) it assures that no conviction will be reversed for the failure to give reasonable notice, should the prosecutor decide that he needs to use what he had originally thought might be rebuttal extraneous offense evidence during his case-in-chief; 2) if the prosecution discovers additional extraneous offense evidence on the eve of trial or even during trial, he has shown good faith in revealing all of the evidence he *was* aware of well before trial; 3) if the list is titled "potential intrinsic and extrinsic act evidence," neither the parties nor the trial judge need engage in a hair-splitting debate concerning whether the specific evidence is evidence of other acts under Rule 404(b) or is "same transaction" evidence not subject to Rule 404(b) notice requirements; 4) a defense attorney avoids any possible allegations of ineffective assistance of counsel

claims for failing to file a written request for notice; 5) a trial judge need not grant a mid-trial continuance for the defense to investigate "surprise" extraneous offense evidence; 6) such an exercise requires both the prosecutor and defense to focus on the entire body of potentially admissible evidence well before the trial, and either or both may revise their original positions based upon that review; finally, and most importantly, 7) it is fair beyond all measure.

With these comments, I join the majority opinion.

MEYERS, J., filed a dissenting opinion, in which PRICE and HOLCOMB, J.J., joined.

Twice, appellant in the instant action has been ill-served. First, his trial counsel failed to render constitutionally effective assistance. See *Jaubert v. State,* 65 S.W.3d 73 (Tex.App.-Waco 2000). Then, a majority of this Court relies on the fortuity that the State introduced extraneous offenses in "rebuttal" to appellant's punishment "case in chief" to reverse the Waco Court of Appeals and reject appellant's ineffective assistance of counsel claim. *Jaubert v. State,* 74 S.W.3d 1, 4 (Tex.Crim. App.2002) (hereinafter cited as "Majority Op."). I dissent to the majority's opinion in that regard. Moreover, I dissent to the majority's underlying holding, that Article 37.07 section 3(g) of the Code of Criminal Procedure[1] entitles a defendant to notice only of the extraneous offenses that the State intends to introduce in its punishment "case in chief." This holding belies the plain language of the statute as well as the dramatic differences between the guilt and penalty phases of a noncapital felony

1. All future references to "Articles" refer to the Code of Criminal Procedure.

trial. I would affirm the Waco Court of Appeals.

### 1. Ineffective Assistance of Counsel.

In order to succeed on his claim of ineffective representation, appellant was required to show that his attorney's failure to request notice was deficient and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The majority correctly takes note of this standard, but then fails to properly apply it. Specifically, the majority states that "[a]s a part of establishing [counsel's deficiency], appellant must show that he was entitled to notice of the extraneous offenses introduced at trial." Majority Op. at 2. Whether appellant was entitled to notice of the offenses goes to the question of whether appellant was harmed by their admission. It does not, however, speak to whether it is deficient for trial counsel, who is proceeding to the punishment phase of a case in which his client plead guilty to five separate felony indictments, to fail to request notice of the State's intent to introduce extraneous offenses. I think that in such an instance, it is certainly deficient for counsel to fail to request notice, and I would affirm the Court of Appeals in that regard. *See Jaubert*, at *80–82.[2]

To succeed under the second prong of *Strickland*, a claimant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. First and foremost, I believe that this analysis has no application in the sentencing phase of a noncapital felony trial. In support of this belief, I have appended the text of my dissenting opinion in *Ex parte Miller*, No. 74,211 (Tex.Crim.App. March 20, 2002) (not designated for publication).

To the extent that appellant was required under existing law to demonstrate that he was prejudiced by trial counsel's deficient performance, he succeeded. I assume that the State was acting in a forthright manner in appellant's case. Had appellant made a request for notice, the State would have provided him with notice because the State was aware of the offenses, and it knew that they were relevant to sentencing—*particularly* in light of appellant's pre-trial Motion for Community Supervision.[3] I therefore agree with the Court of Appeals that appellant was prejudiced because had defense counsel been prepared, there is a reasonable probability that Jaubert's sentence would have been less. *Jaubert*, at 82.

In addition, I note that although this appeal was transferred from Fort Worth to Waco, the Court of Appeals was well

**2.** Once the majority decided that this failure on trial counsel's part did not amount to ineffective assistance, there was nothing left to decide. It has long been the law that failure to succeed on *either* prong of the *Strickland* test for ineffective assistance is fatal to an appellant's claim. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996) (citing *Strickland*, 466 U.S. at 700, 104 S.Ct. 2052). Instead of painting with the broad strokes it chose to, the majority could have based its holding on the far narrower ground of its belief that counsel's performance was not deficient. *See Rodriguez*, 981 S.W.2d 357, 359 (Tex.App.—San Antonio 1999, no pet.) (under "totality of the representation" standard for assessing ineffective assistance claims during the punishment phase of a noncapital felony trial, the failure of defense counsel to request notice under Article 37.07 § 3(g) did not, by itself, constitute ineffective assistance of counsel); *Huynh v. State*, 833 S.W.2d 636, 638 (Tex.App.—Houston [14th Dist.] 1992, no pet.) (failure to file pre-trial motions, in itself, does not result in ineffective assistance).

**3.** As noted below, this motion placed appellant's suitability for community supervision at issue.

within its rights to apply the law of its jurisdiction. In its brief, the State acknowledges that our intermediate courts of appeals are free to differ among themselves on a question of law that remains undecided by the two courts to which they owe obedience. *See Barstow v. State,* 742 S.W.2d 495, 501 n. 2 (Tex.App.-Austin 1987, pet. denied). For all of the policy arguments that are brought forward by the State about the expectations of the litigants in these proceedings, there is a strong counter argument that justice is better served by the intermediate courts of appeal striving to arrive at what they determine to be the best interpretation of the law. If the effect of the decision of the Waco Court of Appeals in the instant case was that defense attorneys routinely made requests under Article 37.07 section 3(g), and that the State routinely replied to them, this effect hardly rises to the level of the "randomness and unpredictability" that the State decries in its brief. Indeed, as discussed below, such a result is exactly the one that the Code of Criminal Procedure contemplates in the first place.

## II.  Statutory Interpretation

The majority determines that it must analyze appellant's claim by deciding whether a defendant is entitled to notice of extraneous offenses introduced in "rebuttal" at punishment. Majority Op. at 3. The majority then proceeds to the "plain language" of Article 37.07 section 3(g) and concludes that a defendant is not entitled to such notice. *Id.*

I take exception to several points in the majority's interpretation, not the least of which is its unusual spin on the word *manner.* Article 37.07 section 3(g) provides: "[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence." [4] Rule 404(b), in turn, provides that evidence of extraneous offenses may be admissible at trial if "upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence." The majority reads these two provisions in conjunction and concludes that "[b]ecause Rule 404(b)'s notice encompasses only case-in-chief evidence, Article 37.07 § 3(g)'s notice requirement appears on its face to encompass only case-in-chief evidence." Majority Op. at 3. The majority thereby reads the *manner* of giving notice under Rule 404(b) to refer to the *scope* of notice under Rule 404(b).

An interpretation that is far truer to the text of the statute,[5] is to read *manner* to mean *manner.* In determining the plain meaning of words in a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and usage." Tex. Gov't Code Ann. § 311.011(a) (Vernon 1998); *Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim.App. 1996). As noted by the Waco Court of Appeals, *manner* is defined as "a way, mode, method of doing anything, or mode of proceeding in any case or situation." *Jaubert,* at 84 (citing BLACK'S LAW DICTIO-

---

4.  In 1998, the Texas Rules of Evidence were jointly promulgated by the Texas Supreme Court and the Texas Court of Criminal Appeals. The combined rules became effective on March 1, 1998. However, section 3(g) does not reflect this change. Tex.Code Crim. Proc. art. 37.07 § 3(g) (Vernon Supp.2000). Former Rule 404(b) of the Texas Rules of

Criminal Evidence is substantially identical to Rule 404(b) of the Texas Rules of Evidence. Thus, we cite to the current rule for ease of reference.

5.  *See Rocha v. State,* 16 S.W.3d 1 at 23–30 (Tex.Crim.App.2000) (Holland, J., concurring).

NARY 963 (6th ed.1990)). Read in context and in accordance with the rules of grammar and usage, *manner* in Article 37.07 section 3(g) simply refers to the mode or method in which notice is requested and given under Rule 404(b): in advance of trial, reasonable, and so forth. *Manner* as used in Article 37.07 section 3(g) does not refer to the *scope* of evidence about which the State is obligated to provide notice in the face of a timely request under 404(b); it refers to the *manner.*

The plain language of the statute supports my reading. If the meaning of the statutory text would have been apparent to the legislators who voted on it, we give effect to that plain meaning. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). Here, it would have been apparent to the legislators who voted on Article 37.07 section 3(g) that the State's obligation to provide notice was not limited to its punishment "case in chief." There is no mention of "case in chief" in Article 37.07 section 3(g) and accordingly, I take the Legislature at its word. I draw not only on the *absence* of the phrase "case-in-chief" in Article 37.07, but also on its *presence* where the Legislature wished to make such a limitation. Specifically, Article 38.37, which governs the admissibility of extraneous offenses in certain cases, contains a similar notice provision:

> On timely request by the defendant, the state shall give the defendant notice of the state's intent to introduce *in the case in chief* evidence described by section 2 [of Article 38.37] in the same manner as the state is required to give notice under Rule 404(b), Texas Rules of Criminal Evidence.[6]

Tex.Code Crim. Proc. art. 38.37 § 3 (Vernon Supp.2001). If incorporation of Rule 404(b)'s manner of giving notice was sufficient, on its own, to incorporate Rule 404(b)'s reference to the State's case in chief, then there would have been no need for the Legislature to limit Article 38.37 section 3 as it did. If the Legislature did not see fit to limit Article 37.07 to the State's "case-in-chief," we should not do so in its stead. *See, e.g., Tamez v. State,* 11 S.W.3d 198, 203 (Tex.Crim.App.2000) (Keller, J., dissenting) ("[e]stablished principles of statutory construction dictate that we interpret a statute in accordance with its literal language unless that language is ambiguous or leads to absurd results. . . . As the law-interpreting branch of government, the judiciary is not empowered to substitute what it believes to be right and fair for what the Legislature has written, even if the statute seems unwise or unfair").

Finally, Article 37.07 section 3(g)'s notice requirement extends beyond evidence the State intends to introduce in its punishment "case in chief," because the requirement explicitly applies to evidence introduced "under this article." The evidence that may be introduced under Article 37.07 is in no way the same evidence that may be introduced under Rule 404(b) in the guilt portion of a trial. The majority simply ignores this crucial distinction: Article 37.07 and Rule 404(b) are entirely different creatures. To assume a one-to-one correlation in their provisions is to blindly ignore not only the language of Article 37.07, but also the effect that language had on decisions from this Court to the contrary.[7]

---

**6.** As with Article 37.07, section 3(g), we refer to Rule 404(b) of the Texas Rules of Evidence for ease of reference. *See supra,* n. 4.

**7.** See *Clewis v. State,* 922 S.W.2d 126, 160 (Tex.Crim.App.1996) (White, J., dissenting)

for a summary of the Legislature's reversal of decisions by this Court to the effect that extraneous offenses were not independently admissible on punishment. That the Legislature made such a concerted effort to overturn this

Rule 404(b) sets out limited exceptions to the general rule that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith" by providing a list of purposes for which such evidence may be admitted. The list is limited and the items therein depend in large part on the defendant's introduction of evidence to the contrary.

Article 37.07 governs the penalty phase of a noncapital trial. In contrast to Rule 404(b), the evidence that may be admitted under Article 37.07 is virtually limitless:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered as to any matter the *court* deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible.....

Tex.Code Crim. Proc. art. 37.07 § 3(a) (emphasis added). *See also* GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38.21, Vol. 42 at 612 (1995) ("[t]he scope of relevant evidence is vastly greater at the penalty stage of the trial than at guilt/innocence. In theory, any evidence probative of proper punishment under any acceptable penological theory would be relevant at punishment").

When the Legislature enacted the notice requirements of Article 37.07 section 3(g) for evidence introduced "under this article" it did so presumably because of the markedly different way in which evidence is introduced at the punishment phase of trial. Indeed, absence of the phrase "case in chief" could be based on the Legislature's understanding that there is no "case in chief" as such at punishment. It is true that at a punishment hearing, both sides take turns in their presentation of evidence, but whether the State has a "case in chief" in the strict legal sense is doubtful. The phraseology of "case in chief" seems in large part to be linked to the State's burden of proof. *See e.g. Long v. State*, 742 S.W.2d 302, 327 (Tex.Crim.App. 1987), ("it should be clear to all that the prosecution in this instance had the burden of proof to establish, if it could during its case in chief, all of the essential elements of the charging instrument beyond a reasonable doubt"), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988) *and overruled on other grounds, Briggs v. State*, 789 S.W.2d 918, 923 (Tex.Crim.App. 1990); *Wilson v. State*, 581 S.W.2d 661, 668 (Tex.Crim.App.1979) ("[t]he State must always establish the identity of the accused as an element of its case in chief");

---

Court's decisions about the admissibility of extraneous offense evidence at the punishment phase of a noncapital felony trial makes the majority's reliance on decisions that predate the legislative amendments extremely problematic. *See* Majority Op. at 4 (relying on *Gipson v. State*, 619 S.W.2d 169, 170 (Tex. Crim.App.1981) in support of the notion that "common law has favored limiting a notice requirement to evidence introduced in the State's case in chief" because " 'the defen-

dant, rather than the State, determines whether a contested issue will be raised, and his determination will not be known until he presents his case. It would be practically impossible for the State to give notice until that time' "). As discussed throughout this opinion, in the open-ended punishment phase of a noncapital felony trial under the current text of Article 37.07, both the defendant *and* the State determine whether a contested "issue" will be raised.

*Valenzuela v. State,* 943 S.W.2d 130, 132 (Tex.App.-Amarillo 1997, no pet.) ("[m]oreover, the burden lies with the State to prove that the accused acted voluntarily. What this means is that the question of whether the defendant acted voluntarily, as opposed to involuntarily or accidentally, is not truly a defense but rather an element of the State's case in chief") (citations omitted).

Although the State may bear a burden of proof on issues such as whether the defendant in fact committed the offenses it wishes to introduce at punishment, the State has been assigned no burden of proof on the broad "issue" of what punishment to assess. *See Miller–El v. State,* 782 S.W.2d 892, 896, n. 1 (citing *Wright v. State,* 468 S.W.2d 422 (Tex.Crim.App.1971) and *Murphy v. State,* 777 S.W.2d 44 at 62–63, n. 10 (Tex.Crim.App.1988) (plurality opinion on State's motion for rehearing)). The State need not offer any evidence on the proper term of years to be assessed. *Wright,* 468 S.W.2d at 424. These differences between the guilt portion and non-capital felony sentencing would have been apparent to the legislators who chose not to limit Article 37.07's notice provision to the State's "case in chief." Therefore, I assume the Legislature meant what it said. *See Boykin,* 818 S.W.2d at 785.

Moreover, regardless of whether either side in a criminal case has an actual punishment "case in chief," it is readily apparent that the decision making process at sentencing differs vastly from the decision making process at the guilt phase. The tools we traditionally employ in evaluating a verdict or capital sentence are woefully inadequate, and rarely used, in the context of noncapital felony sentencing.[8] As then-Presiding Judge McCormick explained in

his argument in favor of admitting extraneous offenses at punishment:

Evidence is "logically relevant" that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Tex. R.Crim.Evid. But logical relevance at the punishment stage of a non-capital trial is difficult to determine because there are few, if any, discrete fact issues for the jury to decide. *Miller–El v. State,* 782 S.W.2d 892, 896 (Tex.Cr.App. 1990). Indeed, this Court has held that deciding what punishment to assess is a normative process, policy oriented and not intrinsically fact bound. *Murphy v. State,* 777 S.W.2d at 63. Thus, punishment evidence is not "relevant" in the sense that it tends to make more or less probable some identifiable fact; rather, punishment evidence is simply information that has been deemed appropriate, either by the Legislature or by the courts, for fact finders to consider in assessing punishment. *Murphy v. State,* 777 S.W.2d at 63.

*Grunsfeld v. State* 843 S.W.2d 521, 558 (Tex.Crim.App.1992) (McCormick, P.J., dissenting). This amorphous decision making process is reflected in Article 37.07 itself. *Either* the State *or* the defendant may introduce evidence on *any matter* the court deems relevant to sentencing, and the State is not obliged to wait for the defendant to present his case in order for extraneous offenses to "become" relevant.

Both the State and the majority make much of the notion that the State cannot anticipate what will be relevant on rebuttal in advance of the defendant's presentation. Majority Op. at 5. This might have been true under prior versions of Article 37.07,

8. As a general rule, *any* sentence within the statutory range will not be disturbed on appeal. *See, e.g., Jackson v. State,* 680 S.W.2d 809, 814 (Tex.Crim.App.1984).

which this Court held permitted admission of extraneous offenses on punishment only if the defendant opened the door to such evidence. *See, e.g., Grunsfeld*, 843 S.W.2d at 555. However, under the current version of the statute, the relevance of the State's evidence at punishment does not depend on the defendant's "case in chief." It depends on what the court, in the exercise of its discretion, deems relevant to sentencing, Texas Rules of Evidence 404 and 405 notwithstanding. Tex.Code Crim. Proc. art. 37.07 § 3(a). Certainly the defendant's theories may make a portion of the State's evidence more relevant or more persuasive, but the State is not required to sit helplessly on its hands and wait for the defendant to open the door to the admission of extraneous offense evidence. This is particularly true where the defendant files a pre-trial motion for community supervision, which would by definition place his suitability for community supervision at issue. The State recognized as much when it admitted at oral argument that it could have introduced evidence of the disputed extraneous offenses in its "case-in-chief." It cannot, therefore, be heard to complain that it would have been "practically impossible" to anticipate that the disputed offenses might "become" admissible at punishment; the offenses were admissible at the outset.

The majority does not even differentiate between extraneous offenses that are offered in "rebuttal" and extraneous offenses that are simply offered *after* the defendant has presented his evidence. *See Washington v. State*, 943 S.W.2d 501, 506 (Tex. App.—Fort Worth 1997, pet. ref'd). In *Washington*, a case upon which the majority heavily relies, the court noted specifically that the State had "no clue" about the substance of the defense witness's testimony prior to the testimony being offered. *Washington*, 943 S.W.2d at 506. The *Washington* court took pains to:

> caution the State that attempts to circumvent the notice requirement of article 37.07, section 3 (g) by offering extraneous offense evidence in rebuttal when it does not properly rebut the defendant's punishment theories will be frowned upon. In all article 37.07, section 3(g) cases with notice issues, we will closely review the nature of the 'rebuttal' evidence to determine whether the State introduced the evidence at that stage of the punishment trial merely to avoid the mandatory notice requirements.

*Id.* By failing to examine the evidence offered by the State to see if it is truly offered in rebuttal, the majority effectively relieves the State of its obligation to provide notice of the extraneous offenses it intends to introduce at *either* phase of trial, provided the State introduces the offenses after the defendant has presented his evidence. *See e.g. Yohey v. State*, 801 S.W.2d 232, 235 (Tex.App.—San Antonio 1990, pet. ref'd) (under Rule 404(b), State not obligated to provide notice of offenses it introduces in rebuttal to defendant's evidence) an Majority Op. at 4 (under Rule 37.07 § 3(g), State not obligated to provide notice of offenses it introduces in "rebuttal" to defendant's punishment "case in chief"). Under the majority's reading of the law, the State can effectively lay behind the log and skirt its obligation to provide notice of the extraneous offenses of which it is aware and that it intends to introduce, so long as the State has the patience to sit on its hands and wait until the defendant has finished presenting his evidence "in chief."[9]

---

9. It also bears mentioning that the same Court that would permit the State to skirt its

requirements to provide notice under Rule 404(b) and Article 37.07 has required the ut-

Finally, I dispute the majority's statutory construction of Article 37.07 section 3(g) inasmuch as the majority resorts to the legislative history of the article without holding that the statute is ambiguous. The majority correctly states that "[w]e look solely to the plain language of the statute for its meaning unless the text is ambiguous or application of the statute's plain language would lead to an absurd result that the Legislature could not possibly have intended." Majority Op. at 2 (citing *Boykin*, 818 S.W.2d at 785). Yet despite its recognition of our general rule for statutory construction, the majority goes on to write that "[e]ven if the statutory language is ambiguous, however, extratextual factors support limiting Article 37.07's notice requirement to case-in-chief evidence." Majority Op. at 2. The effect of our case law has never been that a statute's language can be both plain *and* ambiguous. The majority cannot read the statute both ways without overruling *Boykin* and a long line of cases relying upon it. *See, e.g., Tamez*, 11 S.W.3d at 203 (Keller, J., dissenting); *State v. Mason*, 980 S.W.2d 635, 641 (Keller, J., concurring) ("[a]s we noted in *Boykin*, an appellate court may not consider extratextual factors absent ambiguity or absurd results").

Indeed, the majority's repair to extratextual considerations in this instance points to some of the dangers *Boykin* cautioned against over a decade ago. We restrict our review to the plain language of a statute, where possible, "because the text of the statute is *the law* in the sense that it is the only thing actually adopted by the legislators, probably through compromise.... [and] because the text is the only *definitive* evidence of what the legislators (and perhaps the governor) had in mind." *Boykin*, 818 S.W.2d at 785. In this instance, the majority reads the excerpted debate to mean that Article 37.07's notice requirement is limited to evidence that the State intends to introduce in its punishment "case in chief." Majority Op. at 3–4. This excerpt, however, is not definitive evidence of what the Legislature had in mind at the time it enacted Article 37.07 into law. I don't find it persuasive, much less conclusive.

There are several possible meanings to be attributed to the substance of the colloquy upon which the majority relies. Certainly the majority's interpretation is one possibility. Yet it seems that the concern of the questioning Representative was not so much the *scope* of the State's obligation to provide notice as the degree of specificity with which the State would be required to respond. Another possible interpretation is that this dialogue is largely irrelevant because it does not address the present version of the statute. Representative Smith asked, "you're not requiring them to state exactly what the evidence might be, but simply that they would be introducing extraneous evidence?" and Representative Place answered, "I'm not changing any of the laws of discovery." However, the final version of the statute includes a provision that "[i]f the attorney representing the state intends to introduce an extraneous crime or bad act...., notice of that intent

---

most specificity of a defendant who requests such notice. *See Mitchell v. State*, 982 S.W.2d 425, 427 (Tex.Crim.App. 1998) *and Espinosa v. State*, 853 S.W.2d 36, 38 (Tex.Crim.App. 1993) (per curiam) (defendant cannot rely on request for notice of extraneous offenses that is made in a discovery motion without securing the trial court's ruling on the motion). Moreover, the same Court that finds it "prac-

tically impossible" for the State to anticipate which offenses it will introduce in rebuttal to the defendant's punishment "case in chief" finds it well within the *defendant's* means to sort through a stack of witness statements and anticipate which offenses the *State* intends to introduce in *the State's* case in chief. *Hayden v. State*, 66 S.W.3d 269, 272 (Tex.Crim.App. 2001).

is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." Perhaps the bill's sponsor was not familiar with the bill he was trying to pass. A better explanation for this discrepancy, however, is that this dialogue is simply an awkwardly excerpted passage from the course of legislative debates on the shape that Article 37.07 *would* take once it was enacted into law. Such dialogue has no place in our interpretation of the statute's plain language, unless absolutely necessary. *See Boykin,* 818 S.W.2d at 785–86. In this case, the plain language of the statute is sufficient for its interpretation. Because the majority fails to limit its analysis in this fashion, and because the majority misreads the text of Article 37.07 in order to overturn the Court of Appeals' disposition of appellant's claims, I dissent.

APPENDIX

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NO. 74,211

EX PARTE MICHAEL RYAN MILLER, Applicant

FROM THE COURT OF CRIMINAL DISTRICT COURT NO. 2 OF DALLAS COUNTY

MEYERS, J., filed a dissenting opinion.

### DISSENTING OPINION

In accordance with *Hernandez v. State,* 988 S.W.2d 770 (Tex.Crim.App.1999), the majority applies *Strickland v. Washington,*

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) to determine whether applicant's counsel rendered effective assistance at the punishment phase of his trial. I dissent because *Strickland* can have no meaningful application in noncapital sentencing proceedings, and *Hernandez* is, therefore, unworkable. *Hernandez* should be overruled in favor of the standard we articulated in *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App.1980).[10]

At bottom, the problem with applying *Strickland* in the context of noncapital sentencing proceedings, and hence, the problem with *Hernandez,* is that sentencing in a noncapital case is philosophically and procedurally distinct from the guilt/innocence and capital sentencing proceedings to which the Supreme Court originally applied its two-prong test. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068–69. The Court explained the distinction thus:

> We need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance. A capital sentencing proceeding like the one involved in this case, however, is sufficiently like a trial in its adversarial format and in the existence of standards for decision ... that counsel's role in the proceeding is comparable to counsel's role at trial—to ensure that the adversarial testing process works to produce a just result under the standards governing decision.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 (citations omitted).[11]

---

10. This Court has expressed a willingness to overrule case law that is unworkable or inconsistent. *See Medrano v. State,* 67 S.W.3d 892, 901-902 (Tex.Crim.App. 2002) (Meyers, J., not participating); *Standefer v. State,* 59 S.W.3d 177, 180–81 (Tex.Crim.App.2001);

*Hernandez,* 988 S.W.2d at 772; *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

11. When the Court in *Hernandez* overruled the *Duffy* standard of "reasonably effective assistance of counsel" and replaced it with

That "ordinary," noncapital sentencing proceedings are distinct from capital sentencing proceedings is certainly borne out in Texas law. For example, under our capital sentencing scheme, the sufficiency of the evidence supporting a finding of future dangerousness is judged by the standard of beyond a reasonable doubt, the same inquiry that we employ in judging the legal sufficiency of evidence supporting a conviction. We do not measure the legal sufficiency of the evidence supporting a noncapital sentence, because noncapital sentencing takes place within a *range* of punishment. Therefore, although there must be a certain measure of correspondence between the punishment imposed and the legal sufficiency of the evidence in a capital sentencing, Texas law does not require the same correspondence in a noncapital sentencing. In addition, in the punishment phase of a noncapital trial, the court may admit evidence on "any matter the court deems relevant to sentencing." Tex.Code Crim. Proc. art. 37.07 § 3(a). While the language governing admissibility of evidence in the punishment phase of a capital trial is of similar effect, it is not as broad as that governing admissibility in the noncapital sentencing context. *See* Tex.Code Crim. Proc. art. 37.071 § 2(a). Moreover, capital sentencing proceedings are unique in that, *as a matter of federal constitutional law*, the jury's discretion may not be unfettered or unguided. *See*

*Penry v. Lynaugh,* 492 U.S. 302, 327–28, 109 S.Ct. 2934, 2951–52, 106 L.Ed.2d 256 (1989).

The distinction initially seized upon by the Supreme Court in *Strickland* stems directly from the manner in which the Court defined prejudice. Specifically, to make out a showing that he has been prejudiced by counsel's deficiencies, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In the context of a conviction or death sentence, this analysis may realistically be implemented. As the Supreme Court explained:

> When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer.... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

466 U.S. at 695, 104 S.Ct. at 2068–69. However, the *Strickland* prejudice analysis defies application in the context of a noncapital sentencing proceeding because the considerations that inform the factfin-

---

the two-prong *Strickland* test, it predicated its decision on the notion that the *Duffy* standard was inconsistent with federal constitutional law and, therefore, the Court had "no choice" but to overrule *Duffy. Hernandez,* 988 S.W.2d at 771. To the extent that the Supreme Court has spoken to the issue, it has continually emphasized the unique correlation between capital sentencing proceedings and the guilt/innocence portion of a trial. *See Monge v. California,* 524 U.S. 721, 731–32, 118 S.Ct. 2246, 2252, 141 L.Ed.2d 615 (1998)

("[t]he penalty phase of a capital trial is undertaken to assess the gravity of a particular offense and to determine whether it warrants the ultimate punishment; it is in many respects a continuation of the trial on guilt or innocence of capital murder"); *see also Caspari v. Bohlen,* 510 U.S. 383, 114 S.Ct. 948, 955, 127 L.Ed.2d 236 (1994) (noting that *Strickland* "left open the question whether the [*Strickland*] test would apply to noncapital cases").

der's determination in a noncapital sentencing proceeding transcend the outcome-oriented analysis of the *Strickland* prejudice prong.

Factfinding is an inherently subjective process. This is particularly true in the sentencing context, where the bases for decision making are moral and ethical more than they are scientific or concrete. However, capital sentencing proceedings resemble the guilt/innocence portion of a trial in that they are formalized and there is only one outcome to review: the imposition or non-imposition of a death sentence. In the context of noncapital sentencing, the factfinder weighs subjective considerations and arrives at *a* sentence that may be configured in an endless variety of ways. So in applying *Strickland*, what outcome is a court to evaluate in determining whether a defendant was prejudiced? Do we look to whether the defendant was sentenced to imprisonment rather than community supervision, as we are asked to do in this application? Do we simply decide whether a defendant would have been punished less severely had his counsel rendered effective assistance, as the court did in *Milburn v. State*, 15 S.W.3d 267, 270, 271 (Tex.App.-Houston [14th Dist.]), pet ref'd (applying *Strickland's* prejudice prong to an ineffective assistance of counsel claim and finding "appellant has demonstrate prejudice in this case, even though it is sheer speculation that character witnesses in mitigation would have in fact favorably influenced the jury's assessment of punishment") (citation omitted)? Indeed, is it ever possible for an applicant to make out a successful claim that the "outcome" of his case would have been different if "outcome" can be defined in an infinite variety of ways?

I contend that it is not possible under current law. As this case illustrates, there is simply no way to know what factors led the judge to deny community supervision, or to what extent applicant's sentence would have had to be impacted to demonstrate "prejudice."

Finally, I dissent to the result that the majority reaches because counsel in this instance did not render reasonably effective assistance. Applicant complains of trial counsel's failure to call two additional punishment witnesses. The majority holds that such failure does not equate to deficient performance by trial counsel. *Ex parte Miller*, No. 74,211, slip op. at 3–4 (Tex.Crim.App. March 20, 2002). In this regard, the majority explains that counsel decided the testimony of the four witnesses he called at punishment would be sufficient to support applicant's request for community supervision and holds "we do not conclude that counsel's conduct cannot be considered sound trial strategy." *Id.* at 4. This conclusion, as well as the majority's assertion that "[c]ounsel cannot give a reason and then conclude he had no reason" both suffer from the mistaken assumption that *any* reason is a constitutionally acceptable reason, and that while the "distorting effects of hindsight" may not be used to unnecessarily castigate defense counsel, they may always be used to benefit the prosecution. Here, hindsight protects the integrity of applicant's sentence despite testimony from counsel himself that he had no strategic reason for failing to call the witnesses. *See id.* at 2, n. 2. In this case, applicant entered an open plea of guilty and threw himself on the mercy of the trial court for punishment. By failing to call the police officer to whom applicant confessed and the psychotherapist who later examined him, counsel deprived applicant of a meaningful opportunity to present his sole defense.[12] The psycho-

---

12. Denial of this opportunity alone demonstrates applicant was prejudiced by counsel's

therapist and the officer were the *only* witnesses that would have enabled applicant to demonstrate that *disinterested* parties viewed him worthy of community supervision. Accordingly, I dissent to the majority's reasoning and result.