# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00317-CR

**Eric Joseph Remerowski a/k/a Eric Ritchie, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 01-852-K26, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Eric Joseph Remerowski pleaded guilty before a jury to aggravated robbery. Tex. Pen. Code Ann. § 29.03 (West 2003). After hearing evidence, the jury returned an instructed verdict of guilty and assessed punishment at imprisonment for fifty years. Appellant brings forward five points of error alleging prosecutorial misconduct during jury selection and argument, complaining of the improper admission of extraneous offense and opinion evidence, and urging that the punishment is unconstitutionally excessive. We will overrule these contentions and affirm the conviction.

In February 2001, appellant placed a classified advertisement in the Austin newspaper offering a Toyota Camry for sale. One of the persons who responded to the ad was Zulfiquar Ali. After a series of telephone conversations with appellant, who was using an alias, Ali agreed to pay

$8000 cash for the car. It was agreed that appellant would meet Ali in a convenience store parking lot to consummate the sale.

At the agreed time, Ali drove to the convenience store in his van, accompanied by his wife and two children. Appellant was waiting in the parking lot and told Ali that his wife would soon arrive in the Camry. Appellant was allowed to enter the Alis' van and asked to see the money. After counting the $8000, appellant took a pistol from his pocket, pointed it at the Alis, and told them he was taking the money. He then exited the van, ran to a car parked nearby, and drove away.

Two months later, appellant told a neighbor about this crime and said that if the complainants had resisted "he would have had to just shoot them." The neighbor reported appellant to the police. During a subsequent search of appellant's residence, police found: a .38 caliber pistol from which the serial number had been removed; bullets; several stolen automobile license plates; handcuffs; a can of chemical mace; a "bail enforcement officer badge"; a stun gun; sunglasses with the lenses blacked out as if to use for a mask; a packet referred to by an officer as a "restraint kit" consisting of flex cuffs, duct tape, and nylon rope; latex gloves; a ski mask; super glue and spirit gum, together with instructions on how to use them to prevent leaving fingerprints; shotgun shells taped together with "a remote control device" of the sort used to activate a car alarm; knives; a marihuana bong; a marihuana plant; and documents explaining how to steal information from the magnetic strip on credit cards, how to defeat burglar alarms, and how to forge checks.

Appellant's former roommate testified that appellant forged checks on the roommate's bank account. The roommate also testified that appellant told him he had killed a man in Chicago, blackmailed a woman with whom he had had an affair, and stolen valuable rugs. Appellant often told the roommate about his "grand idea" to kidnap someone for ransom.

2

Appellant and other defense witnesses testified that he suffered from bipolar disorder. This condition, which was aggravated by excessive alcohol and marihuana use, led appellant to create "fantasy worlds." Appellant wrote some of these fantasies in the form of stories and screen plays. Others he simply told to friends and acquaintances as if they were true. Appellant explained that his stories about committing a murder and dealing in stolen rugs in Chicago were fantasy, as was his claim to have blackmailed a woman. Appellant said that he planned and committed the robbery at a time when he had stopped taking his medications for the bipolar disorder and was drinking heavily.

In his first two points of error, appellant urges that he was unfairly prejudiced by questions asked and statements made by the prosecutor during jury voir dire and by remarks made by the prosecutors during jury argument. Appellant voiced no objection to the voir dire statements and questions and thus preserved nothing for review. Tex. R. App. P. 33.1(a). With one exception, appellant either did not object to the jury arguments or did not pursue his objections to an adverse ruling; once again, the alleged errors were not preserved. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).[1]

In the one instance of jury argument properly before us for review, the prosecutor reminded the jurors that appellant had offered no explanation for the ski mask, latex gloves, and badge found in his residence. He continued, "You flash something like [the badge] when you pull them over, huh? Get the woman off the side of the road." Appellant objected to "all this

---

[1] In response to two of his objections, the court instructed the jury to "remember the evidence as they heard it." Contrary to appellant's assertion, this was not an adverse ruling. *See Washington v. State*, 16 S.W.3d 70, 72-73 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (citing *Cook v. State*, 741 S.W.2d 928, 939 (Tex. Crim. App. 1987)).

speculation" unsupported by the record. The prosecutor replied that he was drawing reasonable inferences from the evidence. The court overruled the objection but instructed the prosecutor to "make it clear" that his argument was based on inference. The prosecutor then told the jury without further objection, "You can reasonably infer from his past actions, from his state of mind, from his declaration that he has a criminal mind and from the things we found in his apartment that he had more things on his mind than one robbery."

Although appellant's objection to the prosecutor's remark regarding appellant's intended use of the badge was overruled, the court admonished the prosecutor in the jury's presence to make it clear that he was merely drawing inferences and the prosecutor did so. Under the circumstances, any prejudice from the prosecutor's remark was cured. Finding no violation of substantial rights in the one jury argument preserved for review, we overrule points of error one and two. *See* Tex. R. App. P. 44.2(b).

In point of error three, appellant contends the court erroneously permitted the State to cross-examine his father, a defense witness, regarding extraneous acts of sexual misconduct committed by appellant. The acts in question occurred in the State of Washington, where appellant had worked as a licensed massage therapist. Appellant's massage license was revoked after he was accused of improper sexual acts with clients. The revocation order was introduced in evidence without objection, but the specific findings on which the revocation was based were redacted from the exhibit by agreement of the parties.

Later, during his direct testimony, appellant's father described appellant's upbringing, family life, and talents. He was asked, "Were there any good things about Eric that you noticed?" He replied, "There was a lot of good things about Eric. First of all, he was never an evil person. He

4

was the nicest person, the nicest little kid you will ever know, when he was growing up. . . . I've never seen Eric exhibit an evil—an evil bone." The court thereafter permitted the State to cross-examine the witness by asking numerous "have you heard" questions, including two dealing with the revocation of his massage license: (1) "Had you heard that one of the people that he massaged filed a complaint alleging that he pressed his erect penis against her, during a massage, without her consent," and (2) "Had you heard that he was having sexual relationships with at least two other clients while he was exposed to as a massage [*sic*]—."

Appellant first complains that the State did not give the statutorily required notice of its intention to introduce evidence of these extraneous acts. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2003). Appellant did not object on notice grounds. *See* Tex. R. App. P. 33.1(a). In any event, the article 37.07, section 3(g) notice requirement encompasses only the State's case-in-chief; it does not extend to evidence introduced during cross-examination or rebuttal. *Jaubert v. State*, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002).

Appellant's remaining arguments are that these extraneous acts were not shown to have taken place[2] and that his father was not a character witness subject to impeachment in this manner. *See* Tex. R. Evid. 405. We need not address the merits of these arguments because any error was waived or rendered harmless when the same facts were adduced without objection through other witnesses. During the State's case-in-chief, appellant's former roommate testified that appellant told him that he had sexual relations with a massage client. And in his own subsequent testimony, appellant acknowledged during cross-examination that his massage license had been

---

[2] Apparently, appellant's massage license was revoked in a default proceeding after he failed to appear before the licensing agency to answer the accusations against him.

5

revoked after he was accused of rubbing his penis against a female client and of having sex with other clients. Appellant denied the former allegation, but he admitted the truth of the latter. The overruling of an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Point of error three is overruled.

Appellant's fifth point of error complains of the admission of testimony by Dr. Richard Coons, a psychiatrist called by the State as a rebuttal witness. Coons had not interviewed appellant, but he had reviewed appellant's medical records and listened to the testimony of appellant and his family. Coons testified that in his professional opinion, appellant's conduct "suggest[ed] a significant defective conscience" and that this, not the bipolar disorder, was the explanation for appellant's criminal behavior.[3] Appellant argues that Coons's testimony was inadmissible for several reasons, but there was no objection to the testimony at trial and therefore nothing is presented for review. Tex. R. App. P. 33.1(a). Point of error five is overruled.

Finally, appellant urges that the fifty-year term of imprisonment is grossly disproportionate to the offense. *See Alvarez v. State*, 63 S.W.3d 578, 580-81 (Tex. App.—Fort Worth 2001, no pet.) (discussing *Solem v. Helm*, 463 U.S. 277 (1983), and other cases). The criteria used to determine whether a particular sentence is unconstitutionally disproportionate are: (1) the gravity of the offense and the harshness of the punishment, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for the same offense in other jurisdictions. *Id.* at 581 (citing *Solem*, 463 U.S. at 292).

---

[3] The doctor defined "conscience" as "that part of our personality that makes us feel bad when we do the wrong thing, and it helps us control our behavior."

6

We are not convinced that the fifty-year sentence is unduly harsh for the first-degree felony offense proven, even for a defendant without a previous felony conviction. Moreover, the record before us contains no evidence regarding the sentences imposed on other criminals in Texas or Williamson County, or regarding the sentences imposed for aggravated robbery in other jurisdictions. Thus, we have no basis for concluding that appellant's sentence is disproportionately harsh. Point of error four is overruled.

The judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   May 30, 2003

Do Not Publish

7