# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00211-CR

**John Franklin Armstrong, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR2002-009, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant John Franklin Armstrong was charged with the offenses of aggravated sexual assault (two counts) and aggravated kidnapping. A jury acquitted appellant of the aggravated sexual assault charges but found him guilty of aggravated kidnapping and assessed punishment at ten years= imprisonment and a $10,000 fine, both of which were probated. By four points of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction and complains of the trial court=s admission of extraneous offense evidence. We overrule the points of error and affirm the conviction.

### BACKGROUND

Appellant and the complainant, Janet Kay Armstrong, married in 1982. The couple had two daughters together, both teenagers at the time of trial. In August 2001, Janet filed for divorce and

appellant moved out of their home. He initially moved in with his mother in Dickinson County, but later moved to a resort RV park in Comal County to be closer to his daughters; there he resided in a tent. Appellant also hoped to convince Janet to consider a reconciliation.

About a month after he moved out, appellant returned to the couple=s home while Janet and their daughters were away and took Janet=s wedding dress and some of her jewelry. Although he returned the items a few days later, Janet changed the locks on the doors to the house following the incident.

On October 3, Janet agreed to meet appellant at the RV park to discuss the divorce and arrange for appellant=s visits with his daughters. Janet arrived at the park at about 8:30 p.m. Janet testified at trial that when she arrived, she and appellant initially sat outside at a picnic table and moved inside the tent shortly afterwards to flee from bugs. Appellant contended that Janet immediately went into the tent upon her arrival. According to Janet, appellant tried to persuade her not to follow through with the divorce, as he had on several previous occasions. When Janet informed appellant that she would not change her mind about the divorce, he became agitated. He then pulled out a gun from behind him, Aunholstered it,@ Achambered a round,@ and told Janet that Ahe guesse[d] the children were going to be orphans.@ When Janet asked appellant if he was going to kill her, he responded, AIf I can=t have you no one else will.@ Janet tried to leave, but appellant grabbed her by her arms and threw her on the ground of the tent. He then sat on her abdomen and pinned one arm behind Janet=s head and refused to let her up. Meanwhile, appellant=s gun was on the nearby sleeping bag, an arm=s length away. Janet shouted at appellant and demanded that he let her go, but to no avail. When Janet asked appellant what he wanted from her, he stated that he Aneeded to have sex with [Janet] one more time to have closure to the relationship, and he told [her] he

**2**

would let [her] up if [she] would agree to that.@ When she refused, he slammed her down, causing her to hit her head on a rock underneath the tent. Appellant eventually allowed Janet to get up, although he continued to ask her for sex. She again refused and left the tent. At that point, appellant told Janet that she Abetter watch over [her] shoulder every minute of every day.@ Afraid of what appellant meant by his statement, Janet finally agreed to have sex with appellant. After the sexual encounter was over, appellant asked Janet for her panties, explaining that he wanted her Ascent.@ She refused. She then returned home. Janet did not report the incident to anyone that night.

The following morning, as Janet arrived at work, she received a phone call from the owner of the landscaping service that she had employed to fix a lawn mower at her house. According to the owner, the lawn mower repairman who had been at Janet=s house saw a man breaking into the house. The owner thought it might be appellant. Janet called the police and returned to her house. When she arrived, Comal County Sheriff=s Deputy John Pruess was already there. Pruess had encountered appellant as he left the house. According to testimony at trial, appellant had Ajimmied@ the back door open to enter the house. Although appellant claimed that he only intended to pick up a few of his things, the only item Pruess found in appellant=s possession were the panties that Janet had worn the night before. Nothing else was missing from the house. Pruess also found a gun inside of an overnight bag in the back seat of appellant=s car. Appellant was arrested as a result of the break-in, and Janet applied for a protective order that same day, but she still did not report the events of the previous night to the police or anyone else.

It was not until October 12, nine days after the alleged sexual assault and kidnapping, that Janet first reported the events of October 3 to the police. Although the accounts differed during trial, Janet

**3**

testified that on October 12, she arrived at work, parked her car in the parking garage, and as she exited her car, she saw appellant approaching her with a gun at his side. When he reached Janet=s car, he pulled the slide back on the gun and pointed it into Janet=s abdomen. Appellant told Janet to get in the car, that he Awouldn=t be here after today,@ and he demanded sex from her. Just then, the building engineer, Pablo Galvan, Jr., walked into the garage, and Janet mouthed the word Ahelp@ to him. When appellant realized that someone was behind him, he swung around and pointed the gun at Galvan. Janet used this opportunity to try to get away, but when she did, appellant hit her at least once on the head with the gun. (Janet testified that she was hit three or four times; appellant stated he only hit her once.) Janet fell to the ground, began screaming, and appellant fled. Eventually, a woman approached Janet and helped her into the building. When San Antonio police officer Bruce Thomas Wilson arrived and interviewed Janet about the incident, he asked her if appellant had ever done anything like this before. Janet then recounted the events that took place in the tent on the night of October 3. Because the police officer was a San Antonio police officer and the October 3 incident took place in Comal County, the police officer only obtained the basic facts and then notified Comal County. Janet also secured a final protective order, barring appellant from having any contact whatsoever with Janet or their daughters.

Appellant was charged with two counts of aggravated sexual assault and one count of aggravated kidnapping based on the October 3 incident. A jury acquitted appellant of the aggravated sexual assault charges and convicted him for aggravated kidnapping. The jury assessed punishment at ten years= imprisonment and a $10,000 fine, both of which were probated.

**DISCUSSION**

By his second point of error, appellant challenges the legal sufficiency of the evidence to support his conviction. He specifically challenges the sufficiency of the evidence to support the abduction element of the offense.

Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

The standard of review is the same in both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt. *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.CSan Antonio 1998, no pet.). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The jury is the exclusive judge of the facts proved, the weight to be given the testimony, and the credibility of the witnesses. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury is free to reject or accept any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury maintains the power to

5

draw reasonable inferences from basic facts to ultimate facts. *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.CSan Antonio 1999, no pet.).

We measure the sufficiency of the evidence against a hypothetically correct charge. *Curry v. State*, 975 S.W.2d 629, 630 (Tex. Crim. App. 1998). The indictment charged appellant with committing an aggravated kidnapping by (1) intentionally and knowingly abducting Janet (2) with the intent to violate or abuse her sexually. Tex. Pen. Code Ann. ' 20.04(a)(4) (West 2003).[1] Abduct is defined as to restrain a person with intent to prevent her liberation by secreting or holding her in a place where she is not likely to be found or by using or threatening to use deadly force. *Id.* ' 20.01(2) (West 2003). Restrain means Ato restrict a person=s movements without consent, so as to interfere substantially with the person=s

_____

[1] Section 20.04 provides:

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

(1) hold him for ransom or reward;

(2) use him as a shield or hostage;

(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;

(4) inflict bodily injury on him or violate or abuse him sexually;

(5) terrorize him or a third person; or

(6) interfere with the performance of any governmental or political function.

Tex. Pen. Code Ann. ' 20.04(a) (West 2003).

**6**

liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1) (West 2003). The restraint is without consent if it is accomplished by force, intimidation, or deception. *Id.*

Janet testified at trial that on the night of October 3, while inside the tent, appellant became agitated when Janet reiterated that stopping the divorce proceeding was not an option. He then pulled out a gun, "chambered a round," and told Janet that "he guesses the children [are] going to be orphans." When Janet asked appellant, "Do you mean that you are going to kill me," he responded, "If I can=t have you, no one else will." Janet tried to get out of the tent, but appellant grabbed her by her arms and threw her on the ground of the tent. He then sat on her abdomen and pinned one arm behind her head. She repeatedly shouted at him, urging him to let her go and tried to free herself from his grasp. Janet testified that appellant held her like this "for about three to five minutes." Appellant told Janet that "he needed to have sex with [her] one more time to have closure to the relationship," and "he would let [her] up if [she] would agree to that." When Janet refused, appellant slammed her down, causing her to hit her head on a rock on the bottom of the tent. Janet stated that appellant scared her to death and she "didn=t think [she] was going to be able to leave there without getting shot."

Appellant argues that "[i]f this can be viewed as a restraint it cannot be deemed a substantial interference." For support, he emphasizes that appellant did not force Janet to go to the RV park or to enter the tent, and she was pinned for less than five minutes. He further directs us to Deputy Pruess=s trial testimony, during which appellant=s defense counsel asked Deputy Pruess about his observations of Janet when he met her at her house to investigate the break-in the following day: "Did she [Janet] have any external or obvious bruises on her or anything of that nature?" Deputy Pruess answered: "Not that I

observed, but I wasn=t looking for any evidence.@ He also testified that he did not remember noticing any marks on Janet=s face. Appellant infers from this testimony that Deputy Pruess did not detect any injury on Janet. Finally, he finds it significant that Janet did not report the incident to the authorities until nine days later.

The court of criminal appeals has held that while the legislature did not intend for every crime that involves a victim whose liberty has been interfered with to turn into a kidnapping, there is *no specific time requirement* for determining whether a restraint has taken place. *Hines v. State*, 75 S.W.3d 444, 447-48 (Tex. Crim. App. 2002). It is up to the jury to consider all of the circumstances surrounding the offense and determine whether a Asubstantial@ interferenceC as opposed to a slight interferenceC with the victim=s liberty has taken place. *Id.* at 448.

When viewed in the light most favorable to the verdict, the evidence in this case shows that appellant held a gun and threatened to orphan his and Janet=s children. When Janet tried to leave the tent, appellant threw her on the ground, sat on her abdomen, and pinned her arm behind her head, refusing to let her up unless she had sex with him. As in *Hines*, appellant maintained physical control over the complainant. *Id.* These circumstances surrounding the offense support the jury=s finding that appellant substantially interfered with Janet=s liberty.

Under his legal sufficiency point of error, appellant also argues that the trial court erred in convicting him for Aaggravated@ kidnapping because the jury failed to affirmatively find that appellant used a deadly weapon during the commission of the offense. Appellant was charged with intentionally and knowingly abducting Janet with the intent to violate or abuse her sexually. The aggravating element was

**8**

appellant=s intent to violate or abuse Janet sexually.  Thus, a use of a deadly weapon finding was not a necessary element of the charged offense.  *Compare* Tex. Pen. Code Ann. ' 20.04(a), *with id.* ' 20.04(b).  We overrule appellant=s legal sufficiency challenge.

By his first point of error, appellant challenges the factual sufficiency of the evidence to support his conviction.  In determining the factual sufficiency of the elements of the offense, the reviewing court views all of the evidence in a neutral light.  *Johnson v. State*, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000).  The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact.  *Id.*  In conducting its factual sufficiency review, an appellate court reviews the jury=s weighing of the evidence and is authorized to disagree with the jury=s determination.  *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).  The reviewing court, however, does not substitute its judgment for that of the jury and should set aside the verdict only if the evidence is so weak as to be clearly wrong or manifestly unjust or if the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.  *Zuliani v. State*, 97 S.W.3d 589, 593 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11.  The reviewing court may not reverse a jury=s decision simply because it disagrees with the result.  *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Appellant=s defensive theory throughout the trial was that he and Janet had consensual sex the night of October 3, and only several days later did Janet concoct the story that appellant had kept her in the tent against her will and sexually assaulted her; appellant suggested that Janet did this to gain an advantage in the divorce proceedings.  In cross-examining Janet, appellant=s defense counsel built upon this

theory by repeatedly questioning Janet as to why she waited so long before reporting the alleged assault. On the night of October 3, one of the couple=s daughters called Janet on her cell phone shortly after the sexual act occurred. Janet made no mention to her daughter that she had just been assaulted. Likewise, the next morning when Janet called the police to report appellant=s break-in, she did not mention the assault. Janet testified that before she called the police that morning, she first called her attorney for advice. Appellant=s defense counsel found it significant that appellant=s breaking in to her house caused Janet enough concern to call her attorney for advice and to call the police, yet an alleged sexual assault the night before did not prompt a similar reaction. When Janet actually met with a police officer at her house the morning of October 4, she still said nothing about the events of the night before. Further, the theft of her panties caused Janet to seek appellant=s arrest as well as a protective order, yet she found it unnecessary to report an alleged sexual assault. Similarly, when Janet spoke to appellant=s mother, Bobbie Armstrong, on October 4, she did not mention the alleged assault. Finally, Janet testified that she was a nurse, and yet, she failed to preserve any evidence indicating that she was assaulted.

Appellant testified as to his version of the events that took place on October 3. According to appellant, Janet arrived at the RV park to discuss a possible reconciliation. Janet went into the tent, and appellant admitted that he had a gun in the tent. He stated that the gun was inside a holster and placed near his sleeping bag. At no time during the evening of October 3 did appellant take the gun out of its holster. When Janet expressed unease at the sight of the gun, appellant placed the gun in an overnight bag in an adjoining room in the tentCthe same bag in which it was discovered by Deputy Pruess the following day. Appellant and Janet spoke for about an hour, and then he walked her back to her car. Appellant testified

that Janet had agreed to a one-year Await and see@period, during which neither appellant nor Janet would begin a new romantic relationship with anyone else. Appellant characterized this agreement as a one-year reconciliation agreement. He then asked Janet if she would Abe intimate with [her] husband tonight.@ She agreed; appellant used no force to convince Janet to return to the tent and have sex with him. Appellant denied making any statement about Aorphaning@his and Janet=s children that night; he maintained that the statement was made three weeks earlier during a telephone conversation with Janet. He admitted asking Janet for her underwear, but said he did so only in jest.

The following morning, appellant stated that he called Janet when he first awoke, they had a short conversation during which appellant thanked Janet for the previous evening, and Janet agreed to call him later, as she was running late for work. Appellant tried to get to the house before Janet left for work; he intended to pick up a few more things for his campsite and some of his personal, separate property. Janet, however, had already left for work by the time appellant arrived at the house. He attempted calling her cell phone four more times and her office once to let her know that he was at the house. He was unable to reach Janet, but nevertheless broke into the house through the back door because he no longer had a key to the house. Once inside, he became incensed by what he perceived as indicators that Janet was having an affair. In a confused and emotional state, he picked up the panties that Janet had worn the night before, which had been lying on the bed, shoved them into his pocket, started dialing Janet=s telephone number on his cell phone, and walked out of the house through the garage, when he encountered Deputy Pruess. Appellant testified that he was in no way attempting to interfere with evidence of the alleged sexual assault that occurred the night before when he took the panties. He merely wanted a souvenir of his last night with

**11**

Janet. Appellant speculated that Janet made up the sexual assault allegations in an effort to keep him away from their daughters permanently.

Appellant also attempted to explain his version of the events that occurred on October 12. He said that he was emotionally distraught. He desperately wanted to speak to Janet, and fearing that Janet might scream at the sight of appellant and someone might come to her rescue, appellant brought a gun so that he would be able to keep them away and leave the scene. But the gun had no ammunition in it, and appellant never pointed the gun at Janet or demanded sex from her. He was simply trying to make sure no one got hurt. He admitted hitting Janet, but did so only because he saw Janet reach into her purse, and he was afraid she had a weapon of her own. In trying to prevent Janet from reaching into her purse, appellant accidentally struck her on the head with his gun, but did so only once, contrary to Janet=s account, and then he fled in a state of panic. He turned himself in to the police a few days later.

Appellant=s mother, Bobbie Armstrong, also testified during the trial. She stated that she spoke to Janet on the afternoon of October 4, the day after the incident at the RV park. Appellant asked his mother to call Janet to ask her if she was still willing to wait a year before commencing a new relationship with anyone else. When Bobbie Armstrong posed this question to Janet, Janet said she was still willing to wait the year. At no time during their conversation did Janet report what had occurred the night before.

In his brief, appellant argues that the evidence is factually insufficient to support his conviction. For support, he points out that Janet failed to report the incident until nine days after it occurred. There was no corroborating evidence to support Janet=s allegations, such as evidence of bruising, and Janet failed to attempt to preserve any evidence even though she is a nurse and should have realized the

**12**

importance of preserving evidence. No testimony corroborating Janet=s allegations was presented during the trial, and in fact, testimony from appellant=s mother actually contradicted Janet=s allegations.

On the other hand, Janet testified that she initially decided not to report the October 3 incident because she did not want her children to hear about it. She said that she was hoping to get through with the divorce, move on with her life, and try to forget the whole thing ever happened. Only after she recognized appellant=s conduct towards her was getting worse did she decide to report the incident. And the State argued that Janet=s panties could have been evidence of the alleged sexual assault, but appellant stole that evidence.

Viewing this evidence in a neutral light, we conclude that the jury could have reasonably concluded that appellant committed the offense of aggravated kidnapping. The verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong, nor is the evidence supporting the verdict so weak as to render the verdict clearly wrong or manifestly unjust. Appellant=s second point is overruled.

By his third point, appellant argues that the trial court erred in admitting evidence of extraneous bad acts during the trial. Specifically, appellant contends that evidence of the October 12 attack in Janet=s workplace parking garage and evidence of two Astalking@ incidents on previous dates were inadmissible.

Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401. Relevant evidence is generally admissible, *id.* 402; however, evidence of other crimes, wrongs, or bad acts by the defendant is not admissible if it is relevant only to show that the defendant acted

**13**

in conformity therewith. *Id.* 404(b). The extraneous offense evidence must be relevant apart from indicating mere character conformity; it must tend to make more or less probable some elemental or evidentiary fact or some defensive theory. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh=g); *Johnson v. State*, 932 S.W.2d 296, 301 (Tex. App.CAustin 1996, pet. ref=d). Even if it is relevant, however, extraneous offense evidence may still be excluded if its relevance is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Montgomery*, 810 S.W.2d at 387; *Johnson*, 932 S.W.2d at 303. We review a trial court=s admission of extraneous offense evidence under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 390-92.

Through rigorous cross-examination of Janet, appellant suggested that Janet consented to the sexual encounter that occurred on the night of October 3, and that she fabricated the sexual assault and kidnapping allegations to gain an advantage during her divorce proceedings with appellant. Following appellant=s cross-examination of Janet, the State argued, outside the presence of the jury, that appellant had opened the door to the admission of the extraneous offense evidence because appellant made consent an issue. Furthermore, appellant questioned Janet about the report she made on October 12, nine days after the alleged assault and kidnapping occurred, and noted that she did not go into detail when making the report. Consequently, argued the State, the jury was left with the impression that Janet, for no apparent reason, spontaneously decided to report the October 3 incident on October 12, and that when she did, the police officer to whom she reported the incident did not ask for the details. This implied, according to the State, that Janet was making up the whole story. After the court expressed its concern about the State

**14**

spending too much time on the extraneous offenses and warned the State that if it did spend more time on the extraneous offenses than necessary, the court would Ajump in, because that=s not what this case is about,@ the court allowed the State to present the extraneous offense evidence, but only for a limited purpose.

Appellant objected to the admission of the evidence based on both rule 404(b) and rule 403; the court overruled the objection and allowed a running objection. Before the State proceeded with its evidence, the court, in response to appellant=s request, instructed the jury that they could consider the extraneous offense evidence only Afor the purpose of determining the intent, the motive, the common plan or scheme or design, . . . of the Defendant and for no other purposes whatsoever.@

The State then elicited testimony from Janet describing two occasions in which she observed appellant following her from different locationsCboth incidents occurred after October 3 but before October 12. She then described the events that occurred on October 12. In addition to Janet=s testimony, the State produced three witnessesCOfficer Wilson, to whom Janet reported the incident, Louis Michelle Moran, the woman who saw appellant run off after he hit Janet and then assisted Janet into the building, and Galvan, the building engineer whom appellant threatened with a gun when he came to assist Janet.

An extraneous offense is admissible to prove the culpable mental state required for the charged offense if the required intent cannot be inferred from the act itself, or if the accused presents evidence to rebut that inference. *Johnson*, 932 S.W.2d at 302; *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.CAustin 2002, no pet.); *Zuliani v. State*, 903 S.W.2d 812, 827 (Tex. App.CAustin 1995, pet.

**15**

ref=d). Here, appellant, through the cross-examination of Janet, constructed the defensive theory that Janet had engaged in consensual sex and fabricated the kidnapping and sexual assault allegations to gain an advantage during her divorce proceedings. Appellant therefore disputed his intent to engage in alleged sexual conduct without Janet=s consent, thus placing his intent in issue. *See Brown*, 96 S.W.3d at 512 (citing *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980); *Wiggins v. State*, 778 S.W.2d 877, 884-85 (Tex. App.CDallas 1989, pet. ref=d)). Appellant=s intent cannot be inferred from the mere act of intercourse with Janet. *Id.* (citing *Rubio*, 607 S.W.2d at 502; *Wiggins*, 778 S.W.2d at 884-85). He also contested his intent to restrain Janet=s movements without her consent by force or intimidation in order to abuse or violate her sexually. *See* Tex. Pen. Code Ann. '' 20.01, .04.

Janet=s testimony revealed that on October 12, appellant pointed a gun at her while in a parking garage and demanded sex from her. He prevented her from fleeing from him by hitting her with a gun. Janet testified that appellant displayed a gun the night of October 3 as well, and sought sex from her that night. The trial court could reasonably have concluded that evidence regarding appellant=s conduct on October 12Cpointing a gun at Janet while demanding sex from herCtended to make the existence of appellant=s guilty intent on the night of October 3 more probable than it would be without the evidence. *See Montgomery*, 810 S.W.2d at 391.

Similarly, Janet=s testimony regarding appellant=s following her on two separate occasions could also tend to make the existence of appellant=s intent to restrain her by force or intimidation more probable than it would be otherwise. *See id.* We cannot say that the trial court abused its discretion in concluding that the extraneous offense evidence was relevant to appellant=s intent.

Appellant also objected to the admission of the extraneous offense evidence based on rule 403, which provides: AAlthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .@ Tex. R. Evid. 403. Factors considered in a rule 403 analysis include: (1) how compellingly the extraneous act evidence serves to make a fact of consequence more or less probable;( 2) the potential for the extraneous act evidence to irrationally but indelibly impress the jury; (3) the trial time expended developing the evidence; and (4) the strength of other evidence available to prove a fact of consequence. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). ARule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.@ *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). We will not disturb the trial court=s decision on appeal unless the decision falls outside the zone of reasonable disagreement. *Robbins v. State*, 88 S.W.3d 256, 262 (Tex. Crim. App. 2002); *Hayes*, 85 S.W.3d at 815.

In this case, the October 3 and October 12 events were sufficiently similar and occurred within such a short time span so as to render the extraneous offense evidence compelling on the issue of appellant=s intent. *See Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987) (factors of similarity and remoteness are important in determining the relevance and probative value of extraneous offense evidence); *Brown*, 96 S.W.3d at 512 (same). The State had little other evidence to prove appellant=s intent. Janet=s testimony, along with the circumstantial evidence of appellant taking her underwear the following day, were the only evidence available to the State other than the extraneous offense evidence. The State devoted a considerable amount of trial time in developing the extraneous offense evidence through

Janet=s testimony; the other three witnesses, however, testified only briefly. We cannot say that the evidence irrationally or indelibly impressed the jury. That the jury acquitted appellant of the two aggravated sexual assault charges while convicting him of aggravated kidnapping and assessed punishment at ten years= probation supports the trial court=s determination that the probative value of the evidence outweighed any danger of unfair prejudice. Considering all the factors, we hold that the trial court=s decision that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice did not fall outside the zone of reasonable disagreement. We overrule appellant=s third point.

By his final point of error, appellant contends the trial court erred in failing to grant a mistrial during the punishment phase when the State introduced evidence of other bad acts without providing proper notice. During the State=s cross-examination of appellant in the punishment phase of trial, the State elicited from appellant testimony that he surrendered his nursing license because he was Amedicating@ himself with hydrocodone and marihuana. He obtained the hydrocodone from a patient without the patient=s consent. Only after appellant testified about his drug use did his counsel object to the State=s questions based on its failure to provide notice of intent to offer extraneous offense evidence during the punishment phase of trial. The trial court overruled the objection as to the testimony that had already been provided, but instructed the State not to delve any further into the extraneous offense evidence. Later, after the trial court excused the jury, the State and appellant each offered into evidence the notices of intent provided by the State (none of which listed appellant=s drug use), and appellant asked for a mistrial, which the trial court denied.

The State contends that appellant failed to preserve this point for review, as his objection to the complained-of testimony was untimely. *See* Tex. R. App. P. 33.1(a)(1) (to preserve complaint for

**18**

review, record must show timely objection was made). Assuming without deciding that appellant preserved this point of error for review, under the facts of this case, we conclude that the State was not required to provide notice of its intent to introduce evidence of appellant=s drug use.

We review the admission of extraneous offense evidence for an abuse of discretion. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); *Roethel v. State*, 80 S.W.3d 276, 280 (Tex. App.CAustin 2002, no pet.). We will affirm the trial court=s decision if it falls within a zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001); *Roethel*, 80 S.W.3d at 280.

The notice requirement specific to evidence of extraneous offenses introduced during the punishment phase of trial is found in article 37.07, section 3(g) of the code of criminal procedure; it requires notice of intent to introduce evidence of an extraneous crime or bad act be given in the same manner required by rule of evidence 404(b). Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(g) (West Supp. 2003). This notice requirement, however, encompasses only the State=s case-in-chief evidence, not rebuttal evidence. *Jaubert v. State*, 74 S.W.3d 1, 2-3 (Tex. Crim. App. 2002).

Here, before the State elicited the complained-of testimony, appellant testified during direct examination that he surrendered his nursing license because he was diagnosed with clinical depression following the death of his brother. He also testified that he had Anever been in trouble before@ and that he did not consider himself Aa criminal.@ This testimony suggested that the sole reason for appellant=s surrender of his nursing license was that he was clinically depressed, and it had nothing to do with criminal behavior. The State, through cross-examination regarding appellant=s drug use, sought to rebut this impression.

**19**

Because the testimony was offered as rebuttal evidence, the State was not required to provide notice of its intent to introduce extraneous offense evidence. *See id*. Appellant=s final point is overruled.

## CONCLUSION

Having overruled all of appellant=s points of error, we affirm the trial court=s judgment of conviction.


Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   May 22, 2003

Do Not Publish