Opinion issued May 20, 2004







            











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00459-CR
____________
 
REBEKAH LEVONE JORDAN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Criminal Court at Law No. Eight
Harris County, Texas
Trial Court Cause No. 1143056
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Rebekah Levone Jordan, guilty of the misdemeanor
offense of assault.


 The trial court then assessed appellant’s punishment at one year
in jail, suspended the imposition of appellant’s sentence, placed her on community
supervision for 18 months, and imposed a fine of $300.
          In four points of error, appellant contends that the evidence was legally and
factually insufficient to support her conviction and that the trial court erred in
admitting, over appellant’s objection, improper extraneous offense evidence.
          We affirm.
Factual Background
          John Price, the complainant, testified that, on November 4, 2003, upon
returning from work to his house in La Porte, he heard his dog barking in the back
yard. When Price went outside to investigate, he saw appellant, who was wearing a
yellow, two-piece rain suit, a blue baseball cap, and sunglasses, swinging “what
looked like a radio with a broken antenna” at his dog. When Price asked appellant
who she was, she ignored his question and then told him, “I’m reading your goddamn
meter.” Price described appellant’s demeanor as “pretty aggressive.” After appellant
refused to identify herself to Price following four or five requests, Price asked her to
leave his property. Appellant then walked out Price’s gate and toward the street.
          Price then saw appellant walk toward a small, white pickup truck, which was
parked on the side of the street, partially on the grass. After Price retrieved a pen and
paper from his house, he saw appellant get into the truck. Price noticed “some
markings” on the truck, and he crossed to the side of the street opposite the truck and
walked toward it to get a better view of the markings. He then saw the words
“CenterPoint Energy” written on the side of the truck.
          As Price wrote down the truck’s license plate and company identification
numbers, appellant “screamed something” that he could not understand. Appellant
then put the truck in gear, “stomped the accelerator and spun out” the truck’s tires,
and caused the truck to cross the street and to strike Price. Price’s body “ended up
going up over the [truck’s] hood,” and his feet and legs were pinned underneath the
truck’s front bumper. The truck dragged Price “two or three feet,” and he estimated
the speed of the truck, at the time of impact, to be approximately four or five miles
per hour. Appellant stopped the truck after Price banged on the truck’s hood and
yelled at her to stop. Price then called the La Porte Police Department on his cellular
telephone.
          Price stated that the collision caused him to sustain painful injuries to his legs
and aggravated a previous injury to his left ankle. Although Price did not seek
immediate emergency treatment for his injuries, he went to an emergency room three
days after the collision. He explained that the delay was caused by scheduling
problems with his primary care physician. Price’s doctor told him that Price would
need to undergo surgery to repair a screw, previously installed in his left ankle, that
had been loosened as a result of the collision.
          Natasha Fangman, who lived across the street from Price, testified that she had
gone outside to feed a cat when she heard and saw Price talking with appellant. 
Fangman heard Price ask appellant to identify herself and heard appellant respond,
in an angry tone, “None of your damn business.” Fangman then saw Price go inside
his house and appellant walk toward a small, “CenterPoint” pickup truck. When
Price came back outside, Fangman saw him write down some information and walk
toward the truck. She then saw appellant pull out and strike Price with the truck. 
Fangman then ran inside and called for emergency assistance and for the police. In
Fangman’s opinion, appellant deliberately caused the truck to collide with Price.
          La Porte Police Officer T. Phelan testified that he was dispatched to investigate
the collision, which was initially described to him as “a traffic accident.” When
Phelan arrived at the scene, appellant approached him, “started rambling about how
she had gotten in an argument,” and told Phelan that she “wanted to file charges”
against Price. Appellant, who was wearing a cap that bore the name “CenterPoint”
on it, also told Phelan that Price had “jumped” onto the hood of the truck, and she
later denied striking Price with the truck.
          Price, however, told Officer Phelan that appellant appeared to have made “an
overt attempt to strike him” with the truck. Phelan noted that Price was walking with
a limp, and Phelan examined Price’s left leg and saw that it was red around the ankle,
“as if it was a fresh injury.” Phelan also spoke to Fangman, who generally
corroborated Price’s version of the events, although Phelan noted that both Price and
Fangman told him that the truck had struck Price two times. Phelan arrested appellant
after he saw a muddy rut in the grass at the side of the road where the truck had been
parked and muddy tire tracks crossing the yellow stripe in the center of the road.
          Appellant testified that, on the day of the collision, she was a CenterPoint
Energy meter reader and that she had gone to Price’s house to read the electricity
meter. She was wearing a rain suit and a baseball cap, which bore the name
“CenterPoint.” After reading the meter, which was located in the backyard of Price’s
house, appellant heard a dog barking and waited for the dog’s owner to come to
where she was standing. Appellant testified that she waved her handheld computer
at the dog and told it to “get back.” Appellant then saw Price, who asked appellant
who she was. Appellant told him that she was there to read the meter, and, after Price
asked appellant to leave the property, she did.
          According to appellant, as she walked toward her company truck, which she
had parked partly on the grass, Price came running toward her and, in an angry tone,
yelled at appellant and demanded that she show him some identification. After she
turned on the truck and drove it onto the road, appellant “looked up” and saw Price
standing in front of the truck. She stopped the truck, and Price put his hands on the
hood. Appellant then turned the truck to the left to go around Price, and he “got in
front of the vehicle again.” After appellant stopped the truck again, Price leaned his
body against the truck. Appellant waited until Price moved away from the truck,
pulled around him, parked the truck farther down the street, and waited for a police
officer to arrive. Appellant explained that, after Price had put his hands on the hood
of the truck, she pressed the “emergency button” on her handheld computer, which
requested police assistance.
          When Officer Phelan arrived at the scene, appellant told him that she had called
for police assistance. Appellant testified that Phelan did not ask her any questions
and, after speaking to Price and Fangman separately, came over and arrested
appellant. Appellant denied that she had ever accelerated toward Price when
attempting to move around him and explained that she “didn’t want to hit him.”
Sufficiency of the Evidence
          In her first and second points of error, appellant contends that the evidence was
legally and factually insufficient to support her conviction for assault.
          We review the legal sufficiency of the evidence by viewing it in the light most
favorable to the verdict and asking whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Rayford v. State,
125 S.W.3d 521, 526 (Tex. Crim. App. 2003).
          A person commits the misdemeanor offense of assault if she intentionally,
knowingly, or recklessly causes bodily injury to another person. Tex. Pen. Code
Ann. § 22.01(a) (Vernon Supp. 2004). Here, the information alleged that appellant
“intentionally and knowingly” caused bodily injury to Price by striking him with the
truck, and, in the trial court’s charge, the jury was instructed that it could find
appellant guilty only if it found, beyond a reasonable doubt, that appellant had acted
“intentionally and knowingly.”
          As noted above, Price testified that, after he had confronted appellant
concerning her identity and purpose for being on his property, appellant was
aggressive and told him, “I’m reading your goddamn meter.” When Price wrote down
the CenterPoint truck’s license plate and company identification numbers, appellant
screamed at him and accelerated the truck rapidly. The truck struck Price as he stood
on the opposite side of the street, pinning his legs under the front bumper of the truck
and throwing his upper body onto the hood of the truck. Also admitted into evidence
were some photographs taken by Price that same day, depicting a muddy rut in the
grass where the truck was parked next to the street and a muddy tire track that crossed
the yellow stripe in the center of the street. Price testified that he sustained painful
injuries to his legs in the collision and would likely need to undergo surgery to correct
the movement of a screw in his ankle caused by the collision. Fangman also testified
that she heard appellant respond angrily to Price’s requests for identification and that
she thought appellant had deliberately struck Price with the truck.
          Viewing this evidence in the light most favorable to the jury’s verdict, we hold
that a rational trier of fact could have reasonably found that appellant intentionally
and knowingly caused bodily injury to Price by striking him with a truck. 
Accordingly, we overrule appellant’s first point of error.
          In our review of the factual sufficiency of the evidence, we view all of the
evidence neutrally. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). The
Court of Criminal Appeals has recently stated as follows:
There is only one question to be answered in a factual-sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be insufficient. 
First, when considered by itself, evidence supporting the verdict may be
too weak to support the finding of guilt beyond a reasonable doubt. 
Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict. Weighing all evidence under this balancing
scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so [that] the guilty
verdict should not stand. This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient
to prove the elements of the crime beyond a reasonable doubt. Stated
another way, evidence supporting guilt can “outweigh” the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

Zuniga v. State, No. 539-02, slip op. at 8 (Tex. Crim. App. Apr. 21, 2004) (footnote
omitted). In a factual sufficiency review, we may not substitute our own judgment
for that of the fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).
          Here, appellant testified that, not only did she not intend to strike Price with the
truck, but that she never did so. She stated that, as she attempted to drive around
Price, she stopped the truck each time that he blocked her way and that he moved in
front of the truck and leaned over it.
          We note that the determination of what weight to give contradictory testimonial
evidence is within the sole province of the jury because it turns on an evaluation of
credibility and demeanor. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). A jury’s verdict is not manifestly unjust merely because the jury resolved
conflicting views of evidence in favor of the State. Id. at 410.
          Viewing all of the evidence neutrally, we hold that the jury was rationally
justified in finding guilt beyond a reasonable doubt. Accordingly, we overrule
appellant’s second point of error.
Extraneous Offense Evidence
          In her third point of error, appellant argues that the trial court erred in
admitting, over her objection, evidence of an extraneous assault offense, in violation
of Rule 404(b). See Tex. R. Evid. 404(b). We review a trial court’s ruling to admit
extraneous offense evidence for abuse of discretion. Mitchell v. State, 931 S.W.2d
950, 953 (Tex. Crim. App. 1996).
          At the guilt stage of trial, and after the State had rested its case, appellant
testified. On re-direct examination, appellant’s counsel asked her whether she had
been upset by her encounter with Price. Appellant explained that she had been upset
“[b]ecause I feared that there was going to be some type of situation that I did not
want because I dealt with customers who have done and said things to—all right.”
          Immediately after this testimony, at a bench conference outside the presence
of the jury, the State informed the trial court and appellant that it intended to offer
extraneous offense evidence about a previous incident in which appellant had
assaulted a customer while she was working as a meter reader. The trial court ruled
that appellant had “opened the door” to the admission of such evidence by her own
testimony. Following a recess, appellant’s counsel objected to the admission of any
extraneous offense evidence as follows:
Your Honor, I’m—I’m going to have to object to the prosecutor being
able to get into the prior bad acts and certainly prior convictions, if any. 
I’m going to cite [Rule] 404B. We haven’t been provided with notice. 
I received absolutely no notice that the State was going to use any prior
bad acts for [sic] subsequent convictions for prior convictions.

The trial court overruled the objection.
          When appellant’s counsel then resumed his re-direct examination of appellant,
appellant testified that, in February 1998, while she was employed as a meter reader
for Houston Lighting & Power (HL&P), she had gotten into a fight with an HL&P
customer when she went to the customer’s address to read the meter. Appellant
explained that the customer had accused appellant of driving onto the customer’s
grass and had tried to hit appellant with a stick. Appellant took the stick away from
the customer, and two more people came out and fought with appellant before a third
person stopped the fight. Appellant testified that, as a result of that previous incident,
she had been arrested for assault, but had not been convicted. The trial court in that
case had deferred a finding of guilt and had placed appellant on community
supervision.
          Rule 404(b) provides that evidence of “other crimes, wrongs or acts” is not
admissible to prove a defendant’s character to show action in conformity therewith.
Tex. R. Evid. 404(b). However, evidence of a defendant’s “other crimes, wrongs or
acts” may be admitted to show “proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident” when, after a timely
request by the defendant, the State gives reasonable notice of its intent to use such
evidence in its case-in-chief. Id.
          Appellant objected to the admission of evidence concerning the prior assault
on the ground that the State had not provided appellant with notice of its intent to
introduce such evidence. However, the record indicates that the evidence of which
appellant complains was not introduced by the State in its case-in-chief, but was
introduced by appellant, with additional testimony elicited by the State on rebuttal. 
Therefore, the State was not required to provide notice to appellant of its intent to use
such evidence. See id. With regard to the State’s introduction of extraneous offense
evidence during its rebuttal, the Court of Criminal Appeals has noted as follows:
We have held that, when the State presents extraneous offense evidence
in rebuttal to mitigation evidence offered by the defendant, advance
notice of intent to offer the extraneous offense evidence is not possible: 
“In such a situation, the defendant, rather than the State, determines
whether a contested issue will be raised, and his determination will not
be made known until he presents his case. It would be practically
impossible for the State to give notice until that time.”

Jaubert v. State, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002) (quoting Gipson v. State, 619
S.W.2d 169, 170-71 (Tex. Crim. App. 1981)).
          Based on the circumstances presented, we hold that the trial court did not abuse
its discretion in admitting the evidence of appellant’s prior assault over her objection
to the State’s failure to give notice of its intent to use such evidence.


 Accordingly,
we overrule appellant’s third point of error.
          In her fourth point of error, appellant argues that the trial court abused its
discretion in admitting the evidence of appellant’s prior assault because the probative
value of such evidence was “substantially” outweighed by its prejudicial effect. 
However, as set forth above, appellant did not object at trial to the admission of the
extraneous offense evidence on this ground. Rather, appellant objected to the State’s
failure to give notice of its intent to introduce such evidence. Thus, appellant has not
preserved this issue for review on appeal. Tex. R. App. 33.1(a); Ibarra v. State, 11
S.W.3d 189, 197 (Tex. Crim. App. 1999).
          Accordingly, we overrule appellant’s fourth point of error.
 

Conclusion
          We affirm the judgment of the trial court.



                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.

Do not publish. Tex. R. App. P. 47.2(b).