**Affirmed and Opinion Filed July 12, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01097-CR

**DENVA JOSEPH STERLING, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F-1362092-L**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Schenck
Opinion by Justice Francis

A jury convicted Denva Joseph Sterling of illegal investment in connection with the attempted purchase of 100 pounds of marijuana from an undercover police detective, and the trial court assessed punishment at ten years in prison. In one issue, appellant argues the trial court erred in allowing an undisclosed witness to testify in rebuttal. We affirm.

Appellant and a co-defendant, Alterek Coleman, were indicted for "intentionally and knowingly financ[ing] and [invest[ing] funds . . . [that they] knew and believed . . . were intended to further the commission of the offense of possession of marijuana over 50 pounds." They were prosecuted in a single trial.

The State's first witness was Dallas Police Detective Mario Castanon, who works undercover in the narcotics division. Castanon testified the Department of Homeland Security

approached him after a man, Juan Francisco Perez, contacted one of its confidential informants looking to buy large quantities of marijuana. Castanon contacted Perez, told him he was with the Sinaloa drug cartel, and arranged a meeting at a Dallas restaurant. At the meeting, Perez told Castanon he wanted 200 pounds of marijuana every eighteen days for an East Coast organization. The two agreed on a price of $475 per pound, and Castanon showed him twenty-five pounds of packaged marijuana. Perez told Castanon that was "exactly what he wanted."

Several weeks later, Perez communicated that the East Coast organization was sending its people to Texas to close the deal. A meeting was set at a restaurant parking lot to exchange the money and marijuana. The day before the exchange, Perez reduced the amount to be purchased from 200 pounds to 100 pounds. The amount to be paid for the drugs was $50,000, which included $2,500 to Perez.

When Castanon arrived at the meeting location, Perez introduced him to two men, appellant and co-defendant Coleman. Appellant asked to see the product, but Castanon said he wanted to see the money first. After appellant called to get approval from his "boss," Coleman walked to the trunk of his car, opened a black bag, and showed Castanon a manila envelope. The envelope contained a flat layer of vacuum-sealed money. The package was so thin that Castanon doubted it could be $50,000, but Coleman then slit it open and said it would rise "like bread." When the money expanded as promised, Castanon told the men everything was good. At that point, Castanon stepped away and gave the signal to "do the takedown." Officers rushed in and arrested the men. The money collected from the manila envelope totaled $50,000.

Attorneys for appellant and Coleman cross-examined Castanon about the defendants' knowledge of the amount of marijuana to be sold, the range of prices for various types of marijuana, the elements of the offense, and the State's burden of proof. Castanon acknowledged he had never seen or spoken with either appellant or Coleman before the day of the deal. He

agreed he had no personal knowledge of what Perez may have told appellant or Coleman about how many pounds of marijuana were to be purchased. He also said he had no agreement with the men concerning the amount of marijuana. Castanon assumed that what he told Perez was communicated to the others. He agreed that the "50 pound threshold" was important, and if someone believed they were buying less than that amount, "this charge doesn't apply."

The State presented evidence from two other officers and recalled Castanon before resting its case. During its case in chief, the defense recalled one of the State's witnesses, Sgt. Jennifer Logan, who interviewed Coleman after his arrest. Logan acknowledged that in the interview, she was the first person, not Coleman, to identify the amount of money being used to purchase the drugs and that Coleman told her he did not know "how much weed was supposed to be there."

After the defense rested, the State called Perez in rebuttal over defense objections that he had not been disclosed as a witness. Perez testified appellant was his roommate at the time of the offense. Perez said appellant asked him if he knew someone who could get 100 pounds of marijuana. Perez needed extra money, so he asked a co-worker who, through a cousin, put him in touch with Castanon. Perez met with Castanon and settled on a price for 100 pounds, but Perez quoted appellant a higher amount so that he could take the extra money for himself. Appellant said he would talk to his friend and then later gave Perez the okay for the price.

In the weeks leading up to the deal, Perez said he continually updated appellant as to what was going on. Perez believed someone else was giving appellant instructions, but he did not know who it was. On the day of the deal, Perez picked up appellant and the two went to a local mall to meet a third person, who was supposed to bring the money. Perez did not know that man's name. Although Perez said he never saw the money, he knew the plan was to pay $50,000 for 100 pounds of marijuana.

–3–

On cross-examination, Perez testified he had not expected to be a witness in this case and only learned the previous afternoon that he would be called. He said he was not testifying to get a "good deal," had "no hopes" of a better offer from the State, but did not want to go to prison. As for the drug deal, he said he was going to receive $2,500 from appellant for his role.

In his sole issue, appellant contends the trial court abused its discretion in allowing Perez to testify as a rebuttal witness because Perez's name was not disclosed as a potential witness before trial.

Upon request by the defense, notice of the State's witnesses should be given. *Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989), *abrogated on other grounds*, *Horton v. California*, 496 U.S. 128 (1990). Generally, the State is not required to disclose rebuttal witnesses because it cannot predict the theories or evidence the defense will present at trial. *See Elkins v. State*, 543 S.W.2d 648, 649 (Tex. Crim. App. 1976); *Hoagland v. State*, 494 S.W.2d 186, 188–89 (Tex. Crim. App. 1973); *Jaubert v. State*, 74 S.W.3d 1, 5 fn.6 (Tex. Crim. App. 2002) (Cochran, J., concurring). We review a trial court's decision to allow an undisclosed witness to testify for an abuse of discretion. *See Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993). Absent a showing of bad faith, a trial court does not abuse its discretion by allowing the State to call an undisclosed witness for the sole purpose of rebutting unforeseen testimony. *See Marx v. State*, 953 S.W.2d 321, 338 (Tex. App.—Austin 1997), *aff'd*, 987 S.W.2d 577 (Tex. Crim. App. 1999); *Doyle v. State*, 875 S.W.2d 21, 22 (Tex. App.—Tyler 1994, no pet.).

Initially, we question whether appellant has preserved his complaint for review. The record shows appellant filed a general discovery motion on the first day of trial. The motion included a request for a "list of witnesses the State may intend to call in the trial of this cause, in its case in chief, or as rebuttal or impeachment witnesses or in connection with the issues of

punishment." Before jury selection began, appellant's counsel informed the trial court of the filing:

> [DEFENSE COUNSEL]: [I] filed a 404(b) notice and also a general discovery motion. I believe [the prosecutor] has complied with everything. I think he's shown me his whole file. I think there's nothing out there I don't have, so I'm not complaining. I don't know if you want to grant it or look at it, but like I said, I don't think there's anything entitled to us. He indicated there is no 404(b).
>
> The only other issue out there is if there's – I think there's statements that – where they might mention each other, or somebody might mention the other one, it's my understanding, part of us trying them together is those statements aren't going to be used in trial.
>
> [PROSECUTOR]: I would – what I intend to publish, I'll make sure, agree with [defense counsel] that any statements from Alterek Coleman referring to Denva Sterling will be redacted.
>
> [TRIAL COURT]: All right.
>
> [PROSECUTOR]: I would agree with that.
>
> [TRIAL COURT]: With the understanding -- good. So I made docket - - I made a note on both your motions, [defense counsel], which I had copies, you've gotten discovery and that the State represented there'll be no 404(b) stuff.
>
> [DEFENSE COUNSEL]: Okay. Thank you.

As shown from the above exchange, appellant did not obtain an oral ruling on his discovery motion and the record does not contain any written order on the motion. Moreover, when the issue regarding Perez arose during the middle of trial, appellant told the trial court he never received a witness list from the State.

To preserve a complaint for appellate review, a defendant must (1) present his complaint by timely request, objection or motion, stating specific grounds for the ruling he desires, and (2) obtain a ruling on his request, objection, or motion. *See* TEX. R. APP. P. 33.1. Here, appellant notified the court of the motion but then suggested he did not need a ruling and did not obtain a ruling. Given that our record does not contain a ruling on appellant's request for a list of

–5–

witnesses and given that appellant did not timely complain that he did not receive such a list, we conclude he has not preserved his complaint.

Even if preserved, we conclude the issue is without merit. The State called Perez, an indicted co-defendant, in rebuttal to refute the defensive theory that appellant and his co-defendant had no knowledge of the amount of marijuana being purchased in the drug transaction. Appellant asserts he had an agreement with the State, prior to trial, that Perez would not be called. He argues the State acted in bad faith by actively misleading him into believing Perez would not be called, leaving him no time to prepare.

The record shows that on the morning after defense counsel's extensive cross-examination of Castanon, the State announced it would be calling Perez as a rebuttal witness. Appellant objected that the State was violating an agreement not to call Perez, and he would not have agreed to be tried jointly with Coleman otherwise. The State responded it did not have an agreement or deal with the defense regarding Perez. Rather, the State said it had informed the defense it did not "plan" to call Perez as a witness based on representations from the defense that this was going to be a "punishment case." Instead, the trial tactics changed after the first witness testified, and the State needed to respond to the defense strategy of making knowledge a "major issue." The trial court asked Perez's counsel, who was present in the courtroom, if Perez would testify if called. Counsel said he would. Perez's counsel then said he had been offering Perez's testimony since he was hired, but the State told him it would not call Perez. That changed when the State called him the night before. The trial court asked if there was "anything in the record on an agreement not to call Perez," and defense counsel said no. The trial court further noted it "did hear a conversation" that the case would be "more a punishment issue than anything else." After a recess, the trial court ruled that Perez could testify.

Defense counsel, at that point, told the trial court he never got a copy of a witness list and could "only assume" Perez's name was not on it "since we were told he wasn't going to testify." He said he needed to see a list "to see if they put him on there and -- to intentionally mislead me." The trial court stated it did not recall a witness list "being read to the jury, if one existed even." Defense counsel agreed but accused the State of "flat out lying" to him by saying Perez would not be called.

Considering the record, we cannot conclude appellant has shown the State engaged in bad faith with regard to Perez. The trial court could have believed the State's explanation that it did not plan to call Perez but adapted when the case went from what was represented by the defense as a "punishment case" to a contested case on knowledge. Perez's counsel corroborated the State's explanation, telling the trial court he had been offering Perez's testimony since he was hired, but the State was not interested until after the first day of testimony. The statements by Perez's attorney indicate the State was not "flat out lying" or "actively misleading" the defense about whether it planned to call Perez. Once the defendants' attorneys raised the issue of the defendants' knowledge through the questioning of both Castanon and Logan, the State was entitled to present Perez's testimony to rebut this theory. Having reviewed the record, we conclude the trial court did not abuse its discretion in allowing Perez to testify. We overrule the sole issue.

We affirm the trial court's judgment.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

151097F.U05

–7–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DENVA JOSEPH STERLING, Appellant

No. 05-15-01097-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F-1362092-L.
Opinion delivered by Justice Francis;
Justices Fillmore and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 12, 2016.